UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CHARLES FOX,                                      )
                                                  )
                Petitioner,                        )
                                                  )
        v.                                         )    Civil Action No. 05-40106 (WGY)
                                                  )
HARLEY LAPPIN, Director of the Federal            )
Bureau of Prisons, and DAVID L. WINN, Warden,     )
                                                  )
                Respondents.                       )
                                                  )

DECLARATION OF DIANA JACOBS LEE

I, Diana Jacobs Lee, hereby make the following declaration:

1.      I am an Assistant Regional Counsel at the Northeast Regional Office of the Federal Bureau of Prisons ("BOP") in Philadelphia, Pennsylvania.  I have been employed with the BOP since June 29, 2003.  As part of my official duties, I have access to BOP files maintained in the ordinary course of business on inmates in the custody of the BOP.

2.      On January 27, 2003, petitioner Charles Fox was convicted in the United States District Court for the Southern District of West Virginia of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  The court sentenced petitioner to a 37-month prison term in the custody of the BOP.  Attached hereto as Exhibit A is a true and correct copy of the judgment reflecting petitioner's conviction and sentence.

3.      Petitioner is currently serving his sentence at the Federal Medical Center in Devens, Massachusetts.  His current projected release date, taking into account projected "good

conduct" credit, is February 1, 2006.  Attached hereto as Exhibit B is a true and correct copy of a

printout from the BOP's Public Information Inmate Data reflecting the foregoing information.

      4.      In February 1991, petitioner was sentenced in the United States District Court for

the Southern District of West Virginia to a 27-month term of imprisonment for conspiracy to

distribute marijuana, in violation of 21 U.S.C. § 846, and possession with intent to distribute

marijuana, in violation of 21 U.S.C. § 841(a)(1).  Petitioner was released from custody on

January 19, 1993.  Attached hereto as Exhibit C is a true and correct copy of a printout from the

BOP's Public Information Inmate Data reflecting the foregoing information.

      5.      Pursuant to Bureau of Prisons Program Statement 1351.05, Release of

Information, an inmate may not possess his or her Presentence Investigation Report ("PSR").

Inmates who wish to review their PSRs may access, review, and make notes from them upon

submission of a request to a member of their Unit Team.  I have reviewed the PSR for inmate

Charles Fox, Reg. No. 02972-088, which is maintained in the ordinary course of business at

FMC Devens.  According to the PSR, petitioner was convicted of sexual assault in the second

degree in the Greenbrier County Circuit Court, in Lewisburg, West Virginia, on August 18,

1981.  The court subsequently sentenced petitioner to a prison term of 5-10 years.  Fox began

serving that sentence on July 25, 1984, and was released from custody on July 25, 1989.

According to a printout of the BOP's Security/Designation Data, a true and correct copy of

which is attached hereto as Exhibit D, the BOP has no further information concerning the details

of this crime, except for a record notation that petitioner was originally charged with "unlawfully

and feloniously and forcibly engaging in sexual intercourse."

      6.      Attached hereto as Exhibit E is a true and correct copy of Chapters 1 and 7 from

BOP Program Statement 5100.07, Security Designation and Custody Classification Manual.

7.      Attached hereto as Exhibit F is a true and correct copy of FMC Devens' Sex Offender Management Program Inmate Handbook.  The last page of Exhibit F indicates that the handbook was presented to petitioner on July 8, 2004, but that he refused to sign an acknowledgment that he had reviewed it.

8.      Attached hereto as Exhibit G is a true and correct copy of a memorandum dated May 19, 2005, from petitioner's Unit Manager, Tony Calabro, to FMC Devens Warden David L. Winn concerning petitioner.

9.      Attached hereto as Exhibit H is a true and correct copy of an administrative remedy request that petitioner filed on June 9, 2005.  Attached hereto as Exhibit I is a true and correct copy of Warden Winn's denial of this request.  Attached hereto as Exhibit J is a copy of petitioner's appeal to the BOP Regional Director concerning the Warden's denial.  This appeal is currently pending with the BOP Regional Director.  As of the date of the signing of this declaration, there have been no proceedings before the BOP General Counsel concerning this remedy request.

10.      Attached hereto as Exhibit K is a true and correct copy of an administrative remedy request that petitioner filed on June 14, 2005.  Attached hereto as Exhibit L is a true and correct copy of Warden Winn's denial of this request.  Attached hereto as Exhibit M is a copy of petitioner's appeal to the BOP Regional Director concerning the Warden's denial.  Attached hereto as Exhibit N is a true and correct of the Regional Director's denial of petitioner's appeal.  As of the date of the signing of this declaration, there have been no proceedings before the BOP General Counsel concerning this remedy request.

11.      Attached hereto as Exhibit O is a true and correct copy of an administrative remedy request that petitioner filed on June 28, 2005.  Attached hereto as Exhibit P is a true and

correct copy of Warden Winn's denial of this request.  To the best of my knowledge as of the date of the signing of this declaration, the Office of the BOP Regional Director has not received an appeal from petitioner concerning this remedy request.

12.    Attached hereto as Exhibit Q is a true and correct copy of a memorandum dated July 8, 2004, concerning the presentation of the Sex Offender Management Program Inmate Handbook to petitioner on that date.


I declare that the foregoing is true and correct to the best of my knowledge and belief, and given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this 15th day of August, 2005

/s/ Diana Jacobs Lee
Diana Jacobs Lee
Assistant Regional Counsel
Northeast Regional Office
Federal Bureau of Prisons

**EXHIBIT A**

08/10/2005  11:49   9787961106

PAGE  01/05

AO 245B (Rev & 961 sheet - Judgment in a Criminal Case)

# United States District Court
## Southern District of West Virginia

UNITED STATES OF AMERICA

v.

**CHARLES MARSHALL FOX**

## JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

Case Number:    **5:02-00255-01**

**David R. Bungard**
Defendant's Attorney

**THE DEFENDANT:**

☒ pleaded guilty to count(s)  **One**

☐ pleaded nolo contendere to count(s) _____ which was accepted by the court.

☐ was found guilty on count(s) _____ after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Numbers |
|---|---|---|---|
| 18 U.S.C. §§ 922(g)(1) and 924(a)(2) | Felon in possession of a firearm | 12/8/01 | 1 |

ENTERED

APR 2 3 2003

SAMUEL L. KAY, CLERK
District & Bankruptcy Courts
Southern Distric    Virginia

The defendant is sentenced as provided in pages 2 through ___5___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc Sec No.:  **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**

Defendant's Date of Birth:  **March 27, 1952**

Defendant's USM No.:  **02972-088**

Defendant's Residence Address

**Route 1, McClung Road**
**Ronceverte, WV 24970**

Defendant's Mailing Address.

**P. O. Box 112**
**Ronceverte, WV 24970**

**April 21, 2003**
Date of Imposition of Judgment

Signature of Judicial Officer

**Charles H. Haden II, United States District Judge**
Name & Title of Judicial Officer

April 23, 2003
Date

A TRUE COPY CERTIFIED
APR 2 3 2003
SAMUEL L. KAY, CLERK

27

08/10/2005  11:49    9787961186                                                    PAGE  02/05

AO 245B (Rev 8 96) Sheet 2 - Judgment in a Criminal Case                            Judgment - Page  2  of  1

DEFENDANT:          **CHARLES MARSHALL FOX**
CASE NUMBER:             **5:02-00255-01**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term of   **THIRTY-SEVEN (37) MONTHS.**

☒  The Court makes the following recommendations to the Bureau of Prisons:

**That Defendant be evaluated upon intake for placement in an appropriate substance and alcohol abuse
treatment program.  The Court further recommends Defendant be incarcerated as close to his home as
possible in a camp-type, minimum security facility if deemed appropriate by the Buerau of Prisons.**

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

   ☐  at _____ a.m./p.m. on _____

   ☐  as notified by the United States Marshal.

☒  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☒  before 2 p.m. on    **Wednesday, May 28, 2003**

   ☐  as notified by the United States Marshal.

   ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

I hereby certify that I have executed in full/part this
document by transporting the within named prisoner
from_____
to_____
c_____

U.S. Marshal, S/WV

BY: Deputy U.S. Marshal

v/s

Defendant delivered on __5-28-03__ to __F CI- LORETO__
at __LORETO, PA 15940__ with a certified copy of this judgment.

~~M. Peter~~ ISO
~~UNITED STATES MARSHAL~~

By _____
~~DEPUTY US MARSHAL~~

AO 245B (Rev. 8/96) Sheet 3 - Supervised Release | Judgment - Page __3__ of __5__

| | |
|---|---|
| DEFENDANT: | **CHARLES MARSHALL FOX** |
| CASE NUMBER: | **5:02-00255-01** |

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of _____ **Two (2) Years**

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below) The defendant shall also comply with the additional conditions on the attached page (if indicated below).

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.
14) you shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance or any paraphernalia related to such substances, except as prescribed by a physician;
15) you shall not purchase or possess a destructive device or other dangerous weapon at any time;
16) you shall submit to random urinalysis or any drug screening method whenever the same is deemed appropriate by the probation officer and shall participate in a substance abuse program as directed by the probation officer.

AO 245B (Rev. 8/96) Sheet 5 - Part A - Criminal Monetary Penalties                    Judgment - Page  4  of  5

DEFENDANT:    **CHARLES MARSHALL FOX**

CASE NUMBER:  **5:02-00255-01**

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|         | **Assessment** | **Fine** | **Restitution** |
|---------|----------------|----------|-----------------|
| Totals: | $    100.00    | $        | $               |

☐  If applicable, restitution amount ordered pursuant to plea agreement..............................  $ _____

## FINE

The above fine includes costs of incarceration and/or supervision in the amount of  $ _____

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(9).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  The interest requirement is waived.

☐  The interest requirement is modified as follows:

## RESTITUTION

☐  The determination of restitution is deferred until _____. An Amended Judgment in a Criminal Case will be entered after such a determination.

☐  The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | *Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---------------|-----------------------|-------------------------------|-----------------------------------------|
|               |                       |                               |                                         |
|               |                       |                               |                                         |
| **Totals :**  |                       |                               |                                         |

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B (Rev. 8/96) Sheet 5 - Part B - Schedule of P     nts                     Judgment - Page  **5**  of  **5**

---

DEFENDANT:          **CHARLES MARSHALL FOX**
CASE NUMBER:              **5:02-00255-01**

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A  ☒ in full immediately; or

B  ☐ $ _____ immediately, balance due (in accordance with C, D, or E); or

C  ☐ not later than _____, or

D  ☐ in installments to commence _____ days after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E  ☐ in _____ (e.g., equal, weekly, monthly, quarterly) installments of  $ _____ over a period of _____ to commence _____ after the date of this judgment.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

**The $100.00 assessment has been paid in full. The Court finds Defendant has the ability to earn at prison employment. In lieu of a fine, the Court ORDERS the Bureau of Prisons to withhold and remit to the Clerk of the Court 75% of Defendant's prison earnings for distribution to the mother of Defendant's child for his support.**

☐ Joint and Several

☐ The defendant shall pay the cost of prosecution.
☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program are to be made as directed by the court, the probation officer, or the United States attorney.

**EXHIBIT B**

```
   NERH1          *        PUBLIC INFORMATION         *      08-01-2005
 PAGE 003         *            INMATE DATA            *      14:46:23
                             AS OF 08-01-2005

REGNO..: 02972-088 NAME: FOX, CHARLES MARSHALL
COMP NO: 020       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: DEV / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 978-796-1000   FAX: 978-796-1118
PRE-RELEASE PREPARATION DATE: 10-27-2005

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  02-01-2006 VIA GCT REL

---------------------CURRENT JUDGMENT/WARRANT NO: 020 ---------------------

COURT OF JURISDICTION...........: WEST VIRGINIA, SOUTHERN DISTRICT
DOCKET NUMBER...................: 5:02-00255-01
JUDGE...........................: HADEN
DATE SENTENCED/PROBATION IMPOSED: 04-21-2003
DATE COMMITTED..................: 05-28-2003
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

 G0002      MORE PAGES TO FOLLOW . . .
```

**EXHIBIT C**

```
   NERH1           *         PUBLIC INFORMATION         *      08-02-2005
 PAGE 008          *            INMATE DATA             *      14:35:06
                                AS OF 08-02-2005

REGNO..: 02972-088 NAME: FOX, CHARLES MARSHALL
COMP NO: 010       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: DEV / DESIGNATED, AT ASSIGNED FACIL

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  01-19-1993 VIA GCT REL

-----------------------PRIOR JUDGMENT/WARRANT NO: 010 -----------------------

COURT OF JURISDICTION...........: WEST VIRGINIA, SOUTHERN DISTRICT
DOCKET NUMBER...................: 5:90-00141-01
JUDGE...........................: HADEN
DATE SENTENCED/PROBATION IMPOSED: 02-07-1991
DATE COMMITTED..................: 04-05-1991
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS

G0002      MORE PAGES TO FOLLOW . . .
```

```
   NERH1          *           PUBLIC INFORMATION          *      08-02-2005
   PAGE 009        *              INMATE DATA             *      14:35:06
                                AS OF 01-19-1993

REGNO..: 02972-088 NAME: FOX, CHARLES MARSHALL
COMP NO: 010       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: DEV / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 978-796-1000   FAX: 978-796-1118
NON-COMMITTED.:   $100.00        $00.00          $00.00        $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00

------------------------PRIOR OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  391
OFF/CHG: CONSPIRACY TO DIST MARIHUANA 21 USC 846; PWID MARIJUANA
         21 USC 841 (A)(1)

   SENTENCE PROCEDURE.............: 3559 SRA SENTENCE
   SENTENCE IMPOSED/TIME TO SERVE.:    27 MONTHS
   TERM OF SUPERVISION............:     4 YEARS
   DATE OF OFFENSE................: 06-11-1990


   G0002       MORE PAGES TO FOLLOW . . .
```

```
   NERH1            *           PUBLIC INFORMATION           *      08-02-2005
   PAGE 010         *              INMATE DATA               *      14:35:06
                                AS OF 01-19-1993

REGNO..: 02972-088 NAME: FOX, CHARLES MARSHALL
COMP NO: 010          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: DEV / DESIGNATED, AT ASSIGNED FACIL
                      PHONE..: 978-796-1000   FAX: 978-796-1118

-------------------------PRIOR COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 01-15-1993 AT MCK AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:   010 010

DATE COMPUTATION BEGAN..........: 02-07-1991
TOTAL TERM IN EFFECT............:    27 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:     2 YEARS       3 MONTHS
EARLIEST DATE OF OFFENSE........: 06-11-1990

JAIL CREDIT.....................:   FROM DATE    THRU DATE

G0002       MORE PAGES TO FOLLOW . . .
```

```
NERH1              *        PUBLIC INFORMATION        *    08-02-2005
PAGE 011           *           INMATE DATA            *    14:35:06
                             AS OF 01-19-1993
```

REGNO..: 02972-088 NAME: FOX, CHARLES MARSHALL . .
COMP NO: 010       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: DEV / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 978-796-1000   FAX: 978-796-1118
                             06-11-1990   06-12-1990


TOTAL PRIOR CREDIT TIME.........: 2
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 105
TOTAL GCT EARNED................: 105
STATUTORY RELEASE DATE PROJECTED: 01-19-1993
SIX MONTH /10% DATE.............: 11-10-1992
EXPIRATION FULL TERM DATE.......: 05-04-1993


ACTUAL SATISFACTION DATE........: 01-19-1993
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: MCK

G0002      MORE PAGES TO FOLLOW . . .

```
   NERH1          *        PUBLIC INFORMATION        *     08-02-2005
PAGE 012 OF 012 *             INMATE DATA            *     14:35:06
                           AS OF 01-19-1993

REGNO..: 02972-088 NAME: FOX, CHARLES MARSHALL
COMP NO: 010        ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS        RESP OF: DEV / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 978-796-1000   FAX: 978-796-1118
ACTUAL SATISFACTION KEYED BY....: JAA

DAYS REMAINING..................: 105
FINAL PUBLIC LAW DAYS...........: 0




G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

**EXHIBIT D**

```
   NERH1  600.00 *              SECURITY/DESIGNATION          *      08-08-2005
PAGE 001          *                     DATA                 *      14:39:53
       REGNO: 02972-088   NAME: FOX, CHARLES MARSHALL                   ORG: CRL
RC/SEX/AGE: W/M/53  FORM D/T: 05-13-2003/1230   RES: WHITE SULPHUR, WV 24986
OFFN/CHG..: 5:02-00255-01 - 18:922G1&924A2 - FELON IN POSSESSION OF A
            FIREARM - 37 MONTHS AND 2 YRS S/R
CUSTODY...: IN          BIL:              CR HX PT: 4      CAR: CARE1
CITIZENSHP: UNITED STATES OF AMERICA  PUB SAFETY: SEX OFFN
CIM CONSID:                                            USM: S WV CHARLESTON
JUDGE.....: HADEN        REC FACL: NR/CAMP IF APP   REC PROG: DRUG/ALCH
DETAINER..: NONE         SEVERITY: MODERATE         MOS REL.: 027
PRIOR.....: SERIOUS      ESCAPES.: NONE             VIOLENCE: > 15 YRS SERIOUS
PRECOMMT..: N/A          V/S DATE:                  V/S LOC.:
OMDT REF..: NO           SEC TOT.: 8             SCORED LEV: LOW
CCM RMKS..: PRS: DIS MARIJ/A&A MARIJ (90-27M); SEX ASLT-2ND D (84 5-10Y)
            (NO INFO ON CASE OTHER THAN SUB WAS ORIG CHRG W/UNLAWFULLY
            FELONIOUSLY & FORCIBLY ENGAGING IN SEXUAL INTERCOURSE; DUI
            (94-4D).  NO CURRENT MEDS.  TRD:  8/2/05.    KB
DESIG: LORETTO FCI              MXR JR  05-13-2003 RSN: LEVEL  MSL:
MGTV/MVED.:
DESIG RMKS:


   G0002      MORE PAGES TO FOLLOW . . .
```

# EXHIBIT E

```
┌─────────────────┐
│  INTRODUCTION   │
└─────────────────┘
```

Bureau of Prisons institutions are grouped into security levels: **MINIMUM, LOW, MEDIUM, HIGH,** plus an **ADMINISTRATIVE** category. Seven factors are required to support an institution's security level:

- mobile patrol,
- gun towers,
- perimeter barriers,
- detection devices,
- internal security,
- housing, and
- inmate-to-staff ratio.

Upon receipt of the U.S. Marshals request to place an inmate at a Bureau institution, the Community Corrections Manager assesses the offender's security and program needs, as well as other administrative factors unique to a correctional environment.

The assignment of an inmate to a particular institution is based upon:

The level of security and supervision the inmate requires;

The level of security and staff supervision the institution is able to provide;

The inmate's program needs, i.e., substance abuse, educational/vocational training, individual and/or group counseling, medical/mental health treatment; and,

Various administrative factors such as, but not limited to,

- level of overcrowding,
- the inmate's release residence,
- judicial recommendations,
- separation needs,
- increased security measures to ensure the protection of victims/witnesses and the public in general.

There are two distinct systems of classification; one for male and one for female offenders.  While each classification item is reviewed for each gender, different points may be assessed for the item.  The point difference is a result of research conducted

which indicates that men and women do not react the same in
similar situations.

Initial designations to Bureau (**or** BOP) institutions are
accomplished by:

     (1) Community Corrections Managers entering information into
a computer database (SENTRY) to compute a security score, and
     (2) Regional and/or Central Office Designators designating
an institution based on the score.

A Security/ Designation Data form is required for any inmate with
a sentence exceeding **30 days**.  Designations to non-federal
facilities may also be completed by Community Corrections
Managers.  Redesignations (transfers) from one Bureau institution
to another are also accomplished by Regional and Central Office
staff based upon many of the same factors used at the time of
initial designation.

The Custody Classification Form (BP-338) may indicate reduced or
increased security requirements based on consideration of both
pre-commitment and post-commitment variables.  Four inmate
custody levels are established:  **MAXIMUM, IN, OUT, and COMMUNITY.**
The lowest level of custody, **COMMUNITY,** is ordinarily reserved
for those inmates who meet the qualifications for participation
in community activities.

This Manual establishes guidelines for designating the place of
imprisonment for each individual.  These guidelines are
consistent with statutory authority as contained in
18 U.S.C. § 3621(b).  All designation and transfer decisions are
made without favoritism given to an individual's social or
economic status.

```
┌─────────────────────────────────────────────────────┐
│  PUBLIC SAFETY FACTORS AND MANAGEMENT VARIABLES       │
└─────────────────────────────────────────────────────┘
```

### PUBLIC SAFETY FACTORS

There are certain factors which require increased security measures to ensure the protection of society.  Staff shall apply any of the following Public Safety Factors (PSF) that are appropriate.  Up to three PSFs may be entered on the Update Security Designation (BP-337).  If more than three applicable Public Safety Factors are identified, use those which would most appropriately control the inmate's placement.

**CODE**            **DESCRIPTION - PSF**

**A**      **NONE**.  No Public Safety Factors apply.

**B**      **DISRUPTIVE GROUP**.  A **male** inmate who is a validated member of a Disruptive Group identified in the Central Inmate Monitoring System shall be housed in a High security level institution, unless the PSF has been waived.

        **Note:**  At the time of initial designation, if the PSI or other documentation identifies the inmate as a possible member of one of the Central Inmate Monitoring Disruptive Groups, Community Corrections (CC) staff shall indicate a PSF on the BP-337.  However, CC staff shall not enter the CIM assignment "Disruptive Group."  Upon loading this PSF on a not-yet-validated member, CC staff shall 1) make a notation in the remarks section to indicate the need for validation upon arrival at the institution, and  2) notify the Central Office Intelligence Section, via GroupWise, to advise them of the inmate's status.  Upon the inmate's arrival at the designated institution, the intake screener shall notify the institution's Special Investigation Supervisor (SIS) of the inmate's PSF, in order to begin the validation process.

**C**      **GREATEST SEVERITY OFFENSE**.  A **male** inmate whose current term of confinement falls into the "Greatest Severity" range according to the Offense Severity Scale  (Appendix B) shall be housed in at least a Low security level institution, unless the PSF has been waived.

CODE            DESCRIPTION - PSF

F      **SEX OFFENDER.** A **male** or **female** inmate whose behavior in
       the current term of confinement or prior history includes
       one or more of the following elements shall be housed in
       at least a Low security level institution, unless the PSF
       has been waived.  A conviction is not required for
       application of this PSF if the PSI, or other official
       documentation, clearly indicates the following behavior
       occurred in the current term of confinement or prior
       criminal history.  If the case was dismissed or nolle
       prosequi, application of this PSF cannot be entered.
       However, in the case where an inmate was charged with an
       offense that included one of the following elements, but
       as a result of a plea bargain was not convicted,
       application of this PSF should be entered.

       **Example:** According to the PSI, the inmate was
       specifically described as being involved in a Sexual
       Assault but pled guilty to Simple Assault.  Based on the
       documented behavior, application of this PSF should be
       entered.

       (1)  Engaging in sexual contact with another person
       without obtaining permission to do so (forcible rape,
       sexual assault or sexual battery);

       (2)  Possession, distribution or mailing of child
       pornography or related paraphernalia;

       (3)  Any sexual contact with a minor or other person
       physically or mentally incapable of granting consent
       (indecent liberties with a minor, statutory rape, sexual
       abuse of the mentally ill, rape by administering a drug or
       substance);

       (4)  Any sexual act or contact not identified above that
       is aggressive or abusive in nature (rape by instrument,
       encouraging use of a minor for prostitution purposes,
       incest).  Examples may be documented by state or Bureau of
       Prisons' incident reports, clear NCIC entries, or other
       official documentation;

       (5)  Attempts are to be treated as if the sexual act or
       contact was completed; and/or,

       (6)     Any offense referenced in the Sex Offender
       Notification and Registration Program Statement.

PS 5100.07
9/3/99
Chapter 7, Page 3

CODE                DESCRIPTION - PSF

G        **THREAT TO GOVERNMENT OFFICIALS**.  A **male** or **female** inmate
         classified with a Central Inmate Monitoring
         assignment of Threat to Government Official shall be
         housed in at least a Low security level institution,
         unless the PSF has been waived.

H        **DEPORTABLE ALIEN**.  A "Deportable Alien" is a **male** or
         **female** inmate who is a citizen of a foreign country,
         rather than the United States.  In addition, the inmate
         shall be housed in at least a Low security level
         institution, unless the PSF has been waived.  This PSF
         also prevents placement in a CCC.  Unless an inmate meets
         all of the below criteria, the PSF shall be applied:

         (1)  **Documented and/or independently verified history of
         stable employment in the U.S.** for at least three years
         immediately prior to incarceration.  Stable or regular
         employment is generally defined as full-time (40 hours a
         week) work.  Part-time or seasonal work prior to
         incarceration does not meet the definition of stable
         employment;

         (2)  **Verified history of domicile in the U.S.** (five or
         more consecutive years immediately preceding the inmate's
         incarceration for the current term of confinement).  For
         example, if an inmate was arrested and detained in March
         1993 on his or her current conviction and was in the U.S.
         between 1980 and 1984, and again between 1992 and 1993, a
         PSF for Deportable Alien shall be applied since the five
         years were not
         consecutive and did not immediately precede his or her
         incarceration; and,

         (3)  **Verified strong family ties in the U.S.**  Strong
         family ties include **only** the immediate family.  Members of
         immediate family include: mother, father, step-parents,
         foster parents, brothers and sisters, spouse, and
         children.  The word "spouse" includes a common-law
         relationship which has previously been established in a
         state which recognizes such a status.  In states which do
         not, a common-law relationship is not considered
         "immediate family."  For determination of applicable state
         laws, Regional Counsel should be consulted.

CODE                DESCRIPTION - PSF

The defendant or the family member's statement to the USPO preparing the PSI is not considered adequate verification for criteria (1) and (2) above.

**The PSF shall not be applied when the Immigration and Naturalization Service (INS) or the Immigration Judge has determined that deportation proceedings are unwarranted and the Institution Hearing Program (IHP) Case Management Activity (CMA) assignment of NO IHP or IHP CMP ND is assigned. Conversely, if the inmate is ordered deported (CMA of IHP CMP WD), the Deportable Alien PSF shall be applied regardless of the above criteria. The Deportable Alien PSF shall also be applied when FCI Oakdale institution staff assign the inmate a CMA assignment of "OAK INS," regardless of the above criteria. Cases with detainers for deportation investigations or other unusual situations will be evaluated individually.**

I      **SENTENCE LENGTH**.  A **male** inmate with more than ten years remaining to serve shall be housed in at least a Low security level institution unless the PSF has been waived.

A **male** inmate with more than 20 years remaining to serve shall be housed in at least a Medium security level institution, unless the PSF has been waived.

A **male** inmate with more than 30 years remaining to serve (including non-parolable LIFE sentences) shall be housed in a High security level institution unless the PSF has been waived.

K      **VIOLENT BEHAVIOR**.  A **female** inmate whose current term of confinement or history involves two convictions (or findings of commission of a prohibited act by the DHO) for serious incidents of violence within the last five years shall be assigned to the Carswell Administrative Unit, FMC Carswell, Texas, unless the PSF has been waived.

L      **SERIOUS ESCAPE**.  A **female** inmate who has been involved in a serious escape within the last ten years, including the current term of confinement, shall be

| CODE | DESCRIPTION - PSF |
|------|-------------------|

assigned to the Carswell Administrative Unit, unless the PSF has been waived.

A **male** inmate who has escaped from a secure facility (prior or instant offense) with or without the threat of violence or who escapes from an open institution or program with a threat of violence shall be housed in at least a Medium security level institution, unless the PSF has been waived.

**M**    **PRISON DISTURBANCE**. A **male** or **female** inmate who was involved in a serious incident of violence within the institution and was found guilty of the prohibited act(s) of Engaging, Encouraging a Riot, or acting in furtherance of such as described in, but not limited to institution disciplinary codes such as 103, 105, 106, 107, 212, 213 or 218. Such a finding must be in conjunction with a period of multiple institution disruptions. Males will be housed in at least a HIGH security level institution and females shall be assigned to the Carswell Administrative Unit, unless the PSF has been waived.

\*   **N**    **JUVENILE VIOLENCE**. A current male or female juvenile offender who has any documented single instance of violent behavior, past or present, which resulted in a conviction, a delinquency adjudication, or finding of guilt. Violence is defined as aggressive behavior causing serious bodily harm or death or aggressive or intimidating behavior likely to cause serious bodily harm or death (e.g., aggravated assault, intimidation involving a weapon, or arson).

**O**    **SERIOUS TELEPHONE ABUSE**. A male or female inmate who utilizes the telephone to further criminal activities or promote illicit organizations and who meets the criteria outlined below, must be assigned a PSF for Serious Telephone Abuse. A conviction is **not required** for the PSF if the Pre-Sentence Investigation (PSI) or other official documentation clearly indicates that the above behavior occurred or was attempted. An inmate who meets this criteria must be housed in at least a Low security level institution, unless the PSF is waived.

The PSF should be entered if any **one** of the following criteria applies.

(1)  PSI or comparable documentation reveals the inmate was involved in criminal activity facilitated by the telephone who:

- meets the definition of a leader/organizer or primary motivator; or

- utilized the telephone to communicate threats of bodily injury, death, assaults, or homicides; or

- utilized the telephone to conduct significant fraudulent activity (actual or attempted) in an institution; or

- leader/organizer who utilized the telephone to conduct significant fraudulent activity (actual or attempted) in the community; or,

- arranged narcotic/alcohol introductions while confined in an institution.

(2)  Federal law enforcement officials or a U.S. Attorney's Office notifies the Bureau of Prisons of a significant concern and need to monitor an inmate's telephone calls;

(3)  The inmate has been found guilty of a 100 or 200 level offense code for telephone abuse.  (Note: 200 level offense codes will be reviewed on a case-by-case basis to determine whether the inmate meets the criteria for a PSF Serious Telephone Abuse).; or,

(5)  A Bureau of Prisons official has reasonable suspicion and/or documented intelligence supporting telephone abuse.

**Note:**  Any inmate who is assigned the Serious Telephone Abuse PSF may be subject to restricted use of the telephone in accordance with Program Statement on Telephone Regulations for Inmates.            *

## DISCONTINUED PUBLIC SAFETY FACTORS

**D**    Firearms

**E**    High Drug

**J**    Designation Assessment

**REQUEST FOR PUBLIC SAFETY FACTOR WAIVER.**  Only the Regional Director or designee is authorized to waive a PSF.  A request for waiver of a PSF shall be submitted to the Regional Office via GroupWise form EMS 409, available on BOPDOCS.  The form shall be completed as described below:

(1)  This item should indicate the request is for waiver of a Public Safety Factor.

(2)  This item should indicate whether the inmate agrees with the recommended team action.  If appropriate, an explanation should be provided.

(3)  This item should include current, complete, and accurate information concerning any medical problems the inmate is experiencing.

(4)  This item should include a brief description of the inmate's adjustment during this period of incarceration.

(5)  This item should provide disciplinary information including all actions reflected on the current Custody Classification Form (BP-338).  Significant histories should be summarized.

(6)  It is important that the rationale include complete and specific information providing justification to support the requested action.

(7)  Indicate whether or not the inmate is eligible for a parole hearing.  If yes, indicate the date of the hearing.

**Table 7-1**

| SECURITY DESIGNATION TABLE (MALES) | | |
|---|---|---|
| INMATE SECURITY LEVEL ASSIGNMENTS BASED ON CLASSIFICATION SCORE AND PUBLIC SAFETY FACTORS | | |
| Classification Score | Public Safety Factors | Inmate Security Level |
| **0 - 5** | **No Public Safety Factors** | **Minimum** |
| | Deportable Alien | Low |
| | Juvenile Violence | Low |
| | Greatest Severity Offense | Low |
| | Sex Offender | Low |
| | Serious Telephone Abuse | Low |
| | Threat to Government Officials | Low |
| | Sentence Length | |
| |   Time remaining > 10 Yrs | Low |
| |   Time remaining > 20 Yrs | Medium |
| |   Time remaining > 30 Yrs | High |
| |     Includes non-parolable LIFE/ Death penalty cases | |
| | Serious Escape | Medium |
| | Disruptive Group | High |
| | Prison Disturbance | High |
| **6 - 8** | **No Public Safety Factors** | **Low** |
| | Serious Escape | Medium |
| | Sentence Length | |
| |   Time remaining  > 20 Yrs | Medium |
| |   Time remaining  > 30 Yrs | High |
| |     Includes non-parolable LIFE/ Death penalty cases | |
| | Disruptive Group | High |
| | Prison Disturbance | High |
| **9 - 14** | **No Public Safety Factors** | **Medium** |
| | Disruptive Group | High |
| | Prison Disturbance | High |
| | Sentence Length | |
| |   Time remaining  > 30 Yrs | High |
| |     Includes non-parolable LIFE/ Death penalty cases | |
| **15 +** | | **High** |

PS 5100.07
CN-2 1/31/2002
Chapter 7, Page 8

Table 7-2

| SECURITY DESIGNATION TABLE (FEMALES) | | |
|---|---|---|
| INMATE SECURITY LEVEL ASSIGNMENTS BASED ON CLASSIFICATION SCORE AND PUBLIC SAFETY FACTORS | | |
| Classification Score | Public Safety Factors | Inmate Security Level |
| 0 - 10 | **No Public Safety Factors**<br>Deportable Alien<br>Juvenile Violence<br>Sex Offender<br>Serious Telephone Abuse<br>Threat to Government Officials<br>Violent Behavior<br>Prison Disturbance<br>Serious Escape | **Minimum**<br>Low<br>Low<br>Low<br>Low<br>Low<br>High<br>High<br>High |
| 11 - 21 | **No Public Safety Factors**<br>Violent Behavior<br>Prison Disturbance<br>Serious Escape | **Low**<br>High<br>High<br>High |
| 22 + | | **High** |

## MANAGEMENT VARIABLES

Management Variables are applied to reflect and support the
professional judgment of Bureau staff in order to ensure
placement in the most appropriate security level institution.
They are required when placement has been made and/or maintained
at an institution level inconsistent with the inmate's scored
security level.  Application of a Management Variable requires
review and approval by the Regional Director or designee.  When
completing the BP-338, institution staff may only enter a
Management Variable which the Designator previously approved and
entered as a management reason.  Otherwise, the Designator or
designee is the only person authorized to enter a variable.  A
maximum of three Management Variables may be entered for each
case.

**Note:**  SENTRY will not permit the simultaneous application of the
Greater Security and Lesser Security MGTVs.

When a Management Variable no longer applies, institution staff
shall remove the variable(s) accordingly.  When no Management
Variable is required, institution staff shall insert the letter
"A" (NONE) in the space to signify that no MGTV(s) apply.
Management Variables entered at initial designation are
automatically transferred onto the BP-338, Custody Classification
form.

**Request for Management Variable/Management Variable expiration
date.**  All requests to apply a Management Variable (MGTV) or to
update the Management Variable Expiration Date (MVED) must be
submitted to the appropriate Designator via GroupWise using form
EMS 409.  (Individual Regional Offices may request additional
information.)  Requests for Management Variables on WITSEC
inmates are to be forwarded to the Inmate Monitoring Section in
the Central Office.  The following criteria shall be utilized:

   a.  Only Regional, CCM, or Central Office staff can apply a
MGTV and update a MVED, with the exception of "I" (Med/Psych),
which shall be applied and reviewed by the Central Office Medical
Designator and "U" (Mariel Cuban Detainee), which shall be
applied by the Community Corrections and Detention Division,
Central Office.

   b.  When requesting a MGTV or an updated MVED, **only** sections
one and six need to be addressed on the GroupWise form EMS 409.
This request should normally be made to the appropriate
Designator within 21 calendar days following the inmate's
scheduled program review to ensure the Designator is receiving a
current Custody Classification Form, BP-338.  After approval by

the Warden, the request may be routed from the unit terminal, and unit staff must enter a DST assignment using the Update Transaction. Staff will enter W MGTV as a DST assignment when the request is routed. The Regional Office staff will remove the assignment when the decision is made.

\*    c. When requesting an updated MVED, staff are to indicate the recommended expiration date on the top portion of form EMS 409.    \*

d. When a case with the MGTV of "I" (Med/Psych) is scheduled for review and it is anticipated that this MGTV is no longer applicable, institution staff are to complete all sections of EMS 409 form and forward the request to the Central Office Medical Designator and the appropriate Regional Office. The Central Office Medical Designator will review the case for continuation or deletion of this MGTV. If this MGTV is no longer appropriate, the Central Office Medical Designator will remove the MGTV. After the Central Office Medical Designator removes the MGTV "I," the Regional Office is to review the case for transfer. If a transfer is not appropriate, another MGTV is to be applied.

Expiration dates are to be assigned in accordance with Table 7-3. The Regional Director, or designee, must evaluate the information on the EMS 409 form to determine the appropriate expiration date for all applicable Management Variables. At the established expiration date, case management staff are to review the current Management Variable(s) to determine appropriateness. In the rare instance when more than one MGTV is applied, all expiration dates will be displayed on the BP-338. When running a SENTRY roster, each MGTV and corresponding MVED will be displayed. Inmates housed in contract facilities are excluded from this review process.

**Management Security Level (MSL).** Upon application of any of the following Management Variables: PSF Waived; Greater Security; Lesser Security, the Designator is to apply an overriding Management Security Level (MSL) to reflect the inmate's assessed security needs. This MSL takes precedence over the security level reflected in SENTRY which is based upon the scored security level and the application of Public Safety Factors. Designation must be made to a DFCL commensurate with the inmate's security needs as reflected in the Management Security Level. **If there is an extenuating circumstance in which an inmate's designation facility is inconsistent with his or her MSL, at least one additional non-MSL MGTV must be added to support and explain the inconsistency.**

CODE      DESCRIPTION - MGTV

A         **NONE**.  No Management Variables apply.  Institution
          staff are permitted to enter this item.

B         **JUDICIAL RECOMMENDATION**.  A court may recommend a
          specific institution or program.  When consistent with
          Bureau of Prisons' policies or when such actions are
          consistent with sound correctional management, the
          Bureau of Prisons attempts to satisfy judicial
          recommendations.  When this is not feasible, the court
          is notified in writing with an explanation outlining
          the reasons for not satisfying that recommendation.
          **When the judicial recommendation is the deciding factor
          causing placement outside normal guidelines, this
          Management Variable shall apply.**

D         **RELEASE RESIDENCE**.  It is the practice of the Bureau of
          Prisons to attempt to place each inmate in an
          institution that is reasonably close to the anticipated
          release area.  Ordinarily, placement within 500 miles
          of the release area is to be considered reasonable,
          regardless of whether there may be an institution
          closer to the inmate's release area.  This Management
          Variable can also apply to inmates who are within 18-24
          months from release.  **This Management Variable shall
          apply when placement of the inmate in close proximity
          to the release residence is the determining factor in
          making the designation and causes placement outside
          normal guidelines.**

E         **POPULATION MANAGEMENT**.  Situations may occur in which
          an inmate requires housing in a facility which is not
          commensurate with his or her security level.  Following
          are example situations: facility activation; population
          pressures affecting available appropriate-level bed
          space within 500 miles of the inmate's anticipated
          release residence; gang/security concerns.  **When
          population management causes placement outside normal
          guidelines, this Management Variable shall apply.**

G         **CENTRAL INMATE MONITORING ASSIGNMENT**.  Pursuant to the
          CIM Program Statement, some inmates, for specified
          reasons, need to be monitored or separated from others.
          Sometimes these special management concerns limit the
          options for placement.  **When the CIM assignment causes**

CODE    DESCRIPTION - MGTV

>       placement outside normal guidelines, this **Management Variable shall apply.**

I       **MEDICAL OR PSYCHIATRIC.**  An inmate who has a history of or is presently exhibiting psychiatric problems may need an initial designation to a psychiatric referral center.  Similarly, documented information reflecting that the inmate may need medical or surgical treatment may require a designation to a medical referral center. Designations and redesignations of these inmates shall be made by the Central Office Medical Designator.  **When the need for medical/psychiatric treatment causes placement outside normal guidelines, this Management Variable shall apply.**

N       **PROGRAM PARTICIPATION.**  Occasionally, inmates become involved in specialized programs which are only available on a limited basis, or at specific institutions; in such instances, it might be appropriate to delay transfer pending completion of the program.  Likewise, an inmate's ability to participate in a unique program may require placement at an institution not commensurate with his or her security level.  **Accordingly, when an inmate's security level changes during participation in a special program not likely to be available in another appropriate facility, causing placement outside normal guidelines, this Management Variable shall apply.**

R       **WORK CADRE.**  At secure facilities without satellite camps, the Regional Director may authorize a certain number of work cadre inmates to perform work outside the perimeter of the institution.  **In some cases, placement may be outside normal guidelines, and this Management Variable shall apply.**

S       **PSF WAIVED.**  An inmate may receive up to three Public Safety Factors (PSFs).  PSFs may be waived after review and approval by the Regional Director or designee. **When Public Safety Factors are waived causing placement outside normal guidelines, this Management Variable shall apply.**  Application of this MGTV mandates that the Regional Director determine the most appropriate level of security required by the inmate and apply a Management Security Level (MSL).  The MSL must be at

| CODE | DESCRIPTION - MGTV |
|------|--------------------|

least one level less than the scored security level which is based on the Security Total and Public Safety Factor(s).

**U**       **MARIEL CUBAN DETAINEE**.  Mariel Cuban Detainees are given an initial custody and security level.  However, Custody Classification Forms are not completed on Mariel Detainees due to the unavailability of certain data at designation (i.e., current term of confinement, length of time remaining to serve, accurate criminal history).  Therefore, transfers for positive or negative behavior may cause placement of a Mariel Detainee in a facility different from his or her initial security or custody level.

**This Management Variable shall be applied by the Community Corrections and Detention Division, Central Office.**

**Mariel Cuban Detainees whose security or custody level does not match that of their facility will have this Management Variable applied.**  Sentenced Mariel Cuban inmates will <u>only</u> have this Management Variable added if they are ordered detained upon expiration of their federal sentences and their security or custody level does not match that of their facility.

**V**       **GREATER SECURITY**.  There may be security concerns which are not adequately reflected in the classification scheme.  **In circumstances where an inmate represents a greater security risk (i.e., pending charges, detainer, escape risk but no DHO finding, etc.) than their assigned security level, they may be placed in an institution outside normal guidelines, and this Management Variable shall apply.**  When this MGTV is applied based on institutional behavior which is **not** supported by a UDC/DHO finding of guilt, staff shall ensure compliance with the criteria as set forth in the Program Statement on Inmate Discipline and Special Housing Units.  Application of this MGTV mandates the Regional Director or designee to determine the most appropriate level of security required by the inmate and apply a Management Security Level (MSL). Designation shall then be made to a DFCL commensurate with the inmate's Management Security Level.  The MSL

PS 5100.07
9/3/99
Chapter 7, Page 14

CODE        DESCRIPTION - MGTV

            must be at least one level greater than the scored
            security level which is based on the Security Total and
            Public Safety Factor(s).

W           **LESSER SECURITY**.  There may be security concerns which
            are not adequately reflected in the classification
            scheme.  **In circumstances where an inmate represents a
            lesser security risk (i.e., detainer removed, positive
            adjustment, etc.) than their assigned security level,
            the inmate may be placed in an institution outside
            normal guidelines, and this Management Variable shall
            apply.**  Application of this MGTV mandates the Regional
            Director or designee to determine the most appropriate
            level of security required by the inmate and apply a
            Management Security Level (MSL).  The MSL must be at
            least one level less than the scored security level
            which is based on the Security Total and Public Safety
            Factor(s).

                    **DISCONTINUED MANAGEMENT VARIABLES**

C           Age
F           Racial Balance
H           Voluntary Surrender
J           Custody
K           Detainer
L           Discipline
M           Grandfather Clause
O           Security
P           Sentence Limitation
Q           Sliding Scale

PS 5100.07
9/3/99
Chapter 7, Page 15

Table 7-3

| MANAGEMENT VARIABLE EXPIRATION TABLE | | |
|---|---|---|
| CODE | DESCRIPTION | LENGTH |
| A | None | N/A |
| B | Judicial Recommendation | N/A |
| D | Release Residence/Planning | N/A |
| E | Population Management | Up to 18 months** |
| G | Central Inmate Monitoring Assignment | N/A |
| I | Medical/Psychiatric | 6 months |
| N | Program Participation | Up to 18 months, at the discretion of the Regional Director** |
| R | Work Cadre | N/A |
| S | PSF Waived* | N/A (However, if an inmate is transferred to a more secure institution based on behavior related to the waived PSF, this MGTV shall be removed.) |
| U | Mariel Cuban Detainee | N/A |
| V | Greater Security* | At the discretion of the Regional Director upon recommendation from institution staff (can be extended indefinitely)*** |
| W | Lesser Security* | N/A |

* = requires application of a Management Security Level (MSL)

** = if no expiration date is entered, SENTRY will default to an expiration date 12 months in advance

*** = any valid SENTRY date may be entered; if no date is entered, SENTRY will default to N/A

**EXHIBIT F**

*Fox – did not take copy*



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Medical Center Devens*

*PO Box 880*
*Ayer, MA 01432*

# Sex Offender Management Program
# Inmate Handbook
(March 1, 2004)

## Introduction
You have been assigned to the Sex Offender Management Program (SOMP) at the Federal
Medical Center, Devens, Massachusetts. This Handbook is designed to describe the goals and
philosophy of the program, the various components of the program, the expectations for behavior
of program participants, and the potential incentives for participating and/or consequences of not
participating in the program.

## Description and Philosophy of the Program
The Sex Offender Management Program (SOMP) was established in 2004 at the Federal Medical
Center (FMC) in Devens, Massachusetts. The SOMP is a mandatory program assignment for
inmates at FMC Devens who have been identified as sex offenders with a Public Safety Factor
(PSF), and whose security classification is LOW or MEDIUM. Inmates need not volunteer for
the SOMP, but are automatically assigned to the program upon arrival to FMC Devens, if they
meet eligibility criteria (outlined below). Inmates admitted to the SOMP remain in the program
throughout their incarceration at FMC Devens.

The primary goal of the SOMP is to help sexual offenders manage their behavior in order to
reduce sexual re-offending. The program adheres to the philosophy that criminal sexual behavior
can be effectively managed in most cases through intensive supervision and competent treatment.
Similarly, the SOMP adheres to the idea that, while sexual deviance disorders are influenced by
biological, social, and psychological factors, individuals have the choice of whether or not to
engage in criminal sexual behavior. The program encourages its participants to change their
criminal lifestyle and become honest, responsible, and law-abiding citizens with effective self-
control skills.

The SOMP recognizes that sex offenders enter the criminal justice system with varying levels of
denial and motivation. The SOMP seeks to evaluate the treatment and supervision needs of all
eligible inmates, and offer and/or recommend specialized sex offender management and
treatment services in accordance with those needs.

**The Staff**
The SOMP staff is comprised of the following individuals:

> D. Becotte, Ph.D., Chief, Psychology Services
> C. Renaud, Ph.D., Program Coordinator
> S. Bisci, LISW, SOMP Social Worker
> C. Majo, Psychology Technician
> Pre-doctoral Psychology Interns

**Admission Criteria**
All inmates at FMC Devens who meet the following criteria are assigned to the SOMP:

1. The inmate must have been assigned the Public Safety Factor of Sex Offender pursuant to Bureau of Prisons Program Statement 5100.07; and,
2. The inmate must have been classified as Low or Medium security pursuant to Bureau of Prisons Program Statement 5100.07.

**The Management Program**
The SOMP is an institution-based program. Program participants are not segregated from the general population. SOMP participants routinely have direct contact with general population inmates, as they use the same housing, dining, educational, medical, recreational, and religious facilities. Inmates participating in the SOMP are expected to work as do all general population inmates in the Bureau of Prisons, and are encouraged to participate in activities and programs that promote personal growth and development outside of the SOMP (e.g., education, vocational training).

The SOMP is comprised of four essential components: assessment, management, treatment, and release planning:

> **Psychosexual Assessment:** A psychological evaluation and risk assessment is completed for all inmates in the SOMP during the course of their management in the program. The assessment component may consist of a series of interviews, questionnaires, psychological tests, and physiological assessment. Participants may be assessed in three areas: intelligence and cognitive functioning, personality and psychopathology, and psychosexual functioning. Measures of sexual arousal (i.e., plethysmograph) and lie detection (i.e., polygraph) may also be recommended. The results of this ongoing, comprehensive evaluation process will be used to develop a Correctional Management Plan (CMP, described below), and to make appropriate recommendations for institutional and community supervision and treatment.

> **Management:** A Correctional Management Plan (CMP) is completed for each inmate in the SOMP. The CMP formally informs the inmate of the SOMP components and requirements, makes treatment and other program recommendations, and informs the

inmate that his adherence to the CMP will be closely monitored. The CMP is individually tailored based on the degree of risk the inmate poses as well as his particular risk factors. The contents of an inmate's CMP may change over time, in conjunction with changes in risk level. SOMP participants have access to their CMP, and are held accountable for adhering to its contents.

**Treatment:** Treatment recommendations are provided within each inmate's SOMP CMP. If an inmate meets eligibility criteria and volunteers for one of the BOP's intensive sex offender programs (e.g., the Sex Offender Treatment Program [SOTP] at FCI Butner, North Carolina), the inmate is referred to that program. Inmates incarcerated at FMC Devens may be encouraged to participate in the following sex offender-specific psychology programs:

1.    **The Sex Offender Education Program.** The Sex Offender Education Program is a manual-assisted basic education program designed to promote acceptance of responsibility, awareness of the harm of sexual victimization and victim impact, and education about relapse prevention concepts. The Sex Offender Education Program is provided by Psychology Services staff. Psychology Services staff monitor each inmate's participation in the Sex Offender Education Program.

2.    **Non-residential Sex Offender Treatment.** While the SOMP is primarily a correctional management program, non-residential sex offender treatment may be available for psychologically suitable inmates who are not eligible for the SOTP at FCI Butner. Non-residential treatment is significantly less intensive than the model of treatment offered at FCI Butner. Non-residential treatment may consist of group therapy and/or individual therapy.

3.    **Psychiatric treatment.** Psychiatric treatment with medications may be considered on an individual basis to address symptom-related concerns.

**Community Release Planning:** This essential component of the program is intended to help program participants maintain therapeutic gains and successfully achieve re-integration into the community upon release from prison. The SOMP staff and Unit Team collaborate to develop a sound release plan for the program participant that includes appropriate post-release housing, possible placement in Community Corrections Centers (CCC), as well as recommendations for employment, community-based treatment, and community supervision.

Prior to the program participant's release from prison, SOMP clinical staff prepare a comprehensive discharge packet. This packet is sent to the United States Probation Officer (USPO) upon the inmate's discharge from the program. The discharge report contains recommendations regarding the intensity of community supervision and monitoring, and generally addresses the areas specific to the offender's sexual deviance and risk (e.g., contact with minors, polygraph testing, treatment recommendations, employment restrictions, Internet restrictions, etc.). The discharge packet is mailed to the USPO approximately 90 days prior to the inmate's release to the community.

Prediction of risk of re-offending is developed through observation, interview, file review, and clinical judgment. In compliance with Bureau of Prisons' policies, the sex offenders in the SOMP are referred to community-based sex offender programs upon their release, and they are subject to notification to state or local law enforcement and Sex Offender Registration officials in the district of release.

## Incentives for Participating in the SOMP

Although the SOMP is a mandatory program assignment, some program components (i.e., completing psychological tests, participating in psycho-education classes, participating in non-residential therapy) are voluntary. SOMP inmates are encouraged to participate in recommended voluntary program components, and are offered the following incentives:

1. Participation provides an opportunity for self-improvement.
2. A Certificate of Completion is given to inmates who satisfactorily complete the psycho-education component. This certificate is forwarded to the Unit Team for placement in the Inmate's Central File.
3. Active participation in the SOMP is considered by the Unit Team in recommending the inmate for Community Corrections Center placement. Conversely, poor cooperation or failure to participate may curtail Community Corrections Center placement.
4. Inmates who actively follow SOMP recommendations may be viewed as motivated for change, a factor associated with decreased risk for re-offense. Conversely, failure to follow SOMP recommendations is viewed as indicative of a lack of motivation for behavior change, a factor associated with increased risk of re-offense. Thus, the extent to which an inmate follows SOMP recommendations may modify his risk assessment.

## Sanctions for Non-compliance with SOMP Requirements and Expectations

1. Failure to follow SOMP recommendations may also result in the following sanctions:
   a. Inmate Performance pay not to exceed the Maintenance pay level.
   b. Assignment to the least preferred housing available.
2. Specific violations of the mandatory program requirements are subject to the Inmate Disciplinary Process.

## Standards of Conduct

Inmates in the SOMP are required to comply with all the rules and regulations governing inmate conduct as defined by the Federal Bureau of Prisons. Failure to follow BOP rules and regulations is subject to disciplinary action. SOMP participants are also strongly encouraged to refrain from behaviors that can contribute to future sex offending behavior (e.g., using materials that promote sexual exploitation of others). Any institutional conduct, including disciplinary infractions and behaviors with the potential to contribute to future sexual offending, may be used in the clinical assessment of a SOMP inmate's risk of re-offense.

### Dress Code

All SOMP participants must adhere to FMC Devens's Dress Code at all times. Unless

otherwise ordered (i.e., for a visual search), SOMP participants must be fully clothed in the presence of staff.

### Inappropriate Materials
To promote accountability and personal responsibility, SOMP staff routinely search the cells of program participants for the presence of contraband, and other items that may be used to further a program participant's sexual deviance (see below). The following items may be considered sexual risk factors (i.e., have the potential to contribute to future sexual offending):

1.  Any type of pornographic or sexually explicit material such as photographs, drawings, and written materials;
2.  Any photograph or "cut-out" from any publication of a nude or partially nude adult or child;
3.  Pictures/drawings of nude adults and/or children;
4.  Any sexual apparatus or paraphernalia;
5.  Any publication or photograph depicting physical abuse or sexual violence;
6.  Any obvious collection of photographs, pictures, or drawings depicting any individuals in sexually explicit or suggestive poses or situations;
7.  Any material that depicts, describes, or encourages activities which may lead to violence, sexual crimes, or exploitation; and,
8.  Any other material that, in the clinical opinion of SOMP staff, is considered to have the potential to contribute to future sexual offending behavior.

Possession of items that are unauthorized per BOP policy result in disciplinary action. Some items may not be unauthorized per BOP policy, but due to their potential contribution to future sex offending, may be inadvisable for a SOMP participant to use, possess, or manufacture. SOMP clinical staff may provide therapeutic guidance on the risks of using such materials (e.g., their use may contribute to increased risk of sexual re-offense). Moreover, an inmate's possession of the items described above, may effect the outcome of his risk assessment.

### Confidentiality
Program participants are informed of the limits of confidentiality. Specifically, program participants are informed that their confidentiality is protected at all times, except in cases where there is potential harm to self or others, when the security of the correctional institution is threatened, or when there is suspected child abuse. As BOP staff are charged with protecting every inmate's confidentiality as defined by policy, SOMP inmates who volunteer to participate in group activities are expected to protect the confidentiality and privacy of other inmates in the program.

### Removal from the SOMP
Normally, an inmate assigned to the SOMP will remain in the SOMP until his release from prison. Program participants do not "graduate" from the program because sex offender

management is viewed as an ongoing process that continues well beyond an individual's release from prison. Progress in the program is task-based, not time-based. Progress is measured in terms of completion of management and treatment goals. Length of time in the program, by itself, does not constitute therapeutic progress or accomplishment.

An inmate whose status changes while in the SOMP, such that he no longer meets eligibility criteria, will be discharged from the program. The reason for removal will be documented in the Central File, and the inmate's Unit Team may request a transfer to another institution.

**All inquiries about the SOMP should be directed to the SOMP Coordinator:**
> Cheryl A. Renaud, Ph.D.
> Psychology Department
> FMC Devens

## INMATE'S ACKNOWLEDGMENT OF REVIEW OF SOMP HANDBOOK

I acknowledge that I have read the SOMP Handbook, and was given an opportunity to ask questions about my participation in this program.  I acknowledge that I may request a copy of this Handbook, or to have additional opportunities to read the Handbook, by submitting to the SOMP Coordinator, an Inmate Request to a Staff Member ("copout").

Charles Fox     02172-088     7-8-04
Inmate's name    Inmate refused to sign    Registration Number     Date
        S.B.

S. B.        SOMP Social Worker     7-8-04
Staff Member       Title           Date
K Mall...

Page 7 of 7

**EXHIBIT G**

06/27/2005  08:23    978790 ` ` 1                PSYCHOLOGY SERV` `            PAGE  06/09

**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Medical Center, Devens*

P.O. Box 880
Ayer, MA 01432

May 19, 2005

MEMORANDUM FOR DAVID L. WINN, WARDEN

FROM:        Tony Calabro, Unit Manager

SUBJECT:     FOX, Charles Marshall
             Reg. No. 02972-088
             CCC Non-referral Justification

The above named inmate has refused Community Correction Placement (i.e., Home Confinement, Electronic Monitoring, or CCC Placement) or was not recommended nor approved for CCC Placement for the following reason(s):

|          |     |                                                              |
|----------|-----|--------------------------------------------------------------|
| XXX      | A.  | Poor Institution Adjustment (Attached BP-351.060).           |
| _____  | B.  | FRP Refuse (Attach PP37, FRP & Commissary Statement).        |
| _____  | C.  | DAPS Require Refuse (Attach PP37, DRG).                       |
| _____  | D.  | Violence/Firearms (Attach PPG6).                             |
| _____  | E.  | Escape/CCC.                                                   |
| _____  | F.  | Sex Offender (Attach PPG0).                                   |
| _____  | G.  | Psychiatric Case.                                            |
| _____  | H.  | Deportable Alien (Attach PPG6).                              |
| _____  | I.  | Unresolved Pending Charges or Detainers.                    |
| _____  | J.  | Unresolved Medical Issue.                                    |
| _____  | K.  | Inmate Refused Community Program Placement.                  |
| _____  | L.  | Too Short for Placement (State ARSD/Where Transferred from). |
| _____  | M.  | Inmate does not require pre-release transition services      |

|          |     |                    |
|----------|-----|--------------------|
| _____  | 1.  | Release Residence  |
| _____  | 2.  | Employment         |
| _____  | 3.  | Monetary Resources |

Comments: The above referenced inmate arrived as a transfer at FMC Devens, MA, on May 27, 2004, for participation in the Sex Offender Management Program (SOMP). He is currently serving a 37 month sentence for Felon in Possession of a Firearm and has a prior conviction for Sexual Assault-2nd Degree, in which he was sentenced to 5 to 10 years and served 5 years. Inmate Fox has failed to participate in SOMP and has displayed poor cooperation by refusing to be interviewed or complete any testing with SOMP Staff.

The Unit Team makes every effort to place all eligible inmates in a Community Corrections Center (CCC). However, based on the circumstances involved in Inmate Fox's case, the Unit Team is recommending that he be denied future consideration for CCC placement. We would encourage that he remain at this facility until his Good Conduct Time Release date of February 1, 2006.

_____          _____
Inmate Signature (if he refused any Community Programs)          Date

Reviewed by:

_____          5-23-05
D. Adams, Case Management Coordinator          Date

_____          5-24-05
Deborah G. Schult, AW(P)          Date

_____          5/24/05
David L. Winn, Warden          Date

**EXHIBIT H**

U.S. DEPARTMENT OF JUSTICE                        REQUEST FOR AJ   INISTRATIVE REMEDY

Fede~  l Bureau of Prisons

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: ___Fox, Charles M.___  ___03972-058___  ___HB___  ___FMC Devens___
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST**

I was turned down for Half Way House for not participating in a Mandatory Program. (SOMP) I would suggest to you that SOMP can't be a mandatory program because there isn't a Program Statement in support of it. I would also suggest that a memo from a Regional Director without a Program Statement can't be used to make a program mandatory. When I came into the system I was given a 10% date just like everyone else was and taking it from me for not participating in one program and completely ignoring all the other programs I did take can only be retalitory. My charge is over 25 years old and there is nothing in my record to suggest that I might be charged with something like that again. Because my charge is not my instant offence the objectives of the SOMP Program (accept responsibility; change behavior) will not benifit me in any way. I pled not guilty 25 years ago and that isn't going to change and there hasn't been anything in my record since then to suggest that I might be charged for something like that again. I have a 5th Ammendment Right against self incrimination and your SOMP Program violates that right because You offer me no pootection concerning the questions You ask. You give us no guarantees where the information will go or how it will be used. Because I refuse to answer your incriminating questions in a non-mandatory program you take my half-way house. I would suggest that before this program can be mandatory the BOP must sanction it with a Program Statement. I would ask that I be given my 10% date to help myself get intergrated back into society.

___05/25/05___                        ___Charles Fox___
    DATE                        SIGNATURE OF REQUESTER

**Part B– RESPONSE**

```
R E C E I V E D
  JUN - 9 2005
 FMC DEVENS
WARDEN'S OFFICE
```

---

_____                    _____
    DATE                        WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

__FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE__              CASE NUMBER: 379884 F1

                                        CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____                    _____
    DATE                        RECIPIENT'S SIGNATURE (STAFF MEMBER)

                                        BP–229(13)
                                        APRIL 1982
USP LVN

**EXHIBIT I**

**FEDERAL MEDICAL CENTER DEVENS, MASSACHUSETTS**
**RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #379884-F1**

This is in response to your Request for Administrative Remedy dated May 25, 2005, in which you allege that you were denied placement in a Community Corrections Center (CCC) "for not participating in a mandatory program," namely the Sex Offender Management Program (SOMP). You claim that: (1) because your sex offense occurred over 25 years ago, the objectives of the SOMP "will not benefit [you] in any way;"(2) "the SOMP can't be a mandatory program because there isn't a Program Statement in support of it;" and (3) the SOMP violates your Fifth Amendment right precluding self-incrimination because you are asked questions and are provided with "no guarantees where the information will go or how it will be used." You assert your belief that your CCC placement was taken away from you because you refused to answer incriminating questions in a "non-mandatory program," and request to receive a halfway house placement of a duration equal to "10%" of your prison sentence.

An investigation into your request revealed the following: Your records reveal you have a Public Safety Factor (PSF) of Sex Offender and are classified as low security. Thus, you meet the eligibility criteria for the SOMP at the Federal Medical Center (FMC) Devens. The SOMP is a mandatory correctional management program whose primary goal is to help sex offenders manage their behavior in order to reduce sexual reoffending. The SOMP aims to evaluate the treatment and supervision needs of all eligible inmates, and to offer and/or recommend specialized sex offender management and treatment services in accordance with those needs. According to your Pre-Sentence Investigation Report (PSI), on August 18, 1981, you were convicted of Sexual Assault, Second Degree, in the state of West Virginia. Given this history, it is appropriate to evaluate your sex offense-specific treatment and supervision needs.

18 U.S.C., Section 3621, gives the Bureau of Prisons the general authority to establish programs deemed necessary to assist in the correctional management of inmates. The SOMP operates under this general authority. While the SOMP is a mandatory management program, some components of the SOMP may require an inmate's cooperation and participation. As outlined in the SOMP Inmate Handbook, inmates in the program are encouraged to participate in program components that require their active involvement, and are offered a variety of incentives to do so. For instance, a Certificate of Completion is given to inmates who satisfactorily complete the psycho-education component of the program (one of the treatment components that may be recommended). With regard to Community Corrections Center (CCC) placement, the SOMP Inmate Handbook states, "Active participation in the SOMP is considered by the Unit Team in recommending the inmate for CCC placement. Conversely, poor cooperation or failure to participate may curtail CCC placement." Participation in the SOMP will assist in developing good institutional adjustment, program participation, and community re-integration.

Program Statement 7310.04, CCC Utilization and Transfer Procedures, clearly indicates the limitations on eligibility for CCC referrals. P.S. 7310.04 states that inmates who are assigned a Public Safety Factor of Sex Offender are among the categories of inmates who "shall not ordinarily participate in CCC programs." Nevertheless, a referral for CCC placement may be

made if you demonstrate good institutional adjustment, including participating in recommended programs. Your records reveal you have not participated optimally in the SOMP, and your unit team recommended you be denied consideration for CCC placement based on poor institutional adjustment.

Your records reveal you were seen by SOMP staff on June 9, 2004, at which time you were verbally provided with information about the SOMP, including the purpose of the evaluation component in the program and the limits of confidentiality. You met with SOMP staff on July 8, 2004, at which time you were provided with a written description of the program (i.e., a SOMP Inmate Handbook), and your questions about the program were answered. The SOMP Inmate Handbook provides a comprehensive description of the program, including the goals, admission criteria, and different components of the SOMP. It also describes the purpose and process of the SOMP evaluation, as well as the limits of confidentiality. Specifically, the SOMP Inmate Handbook indicates that the results of the evaluation are used for correctional management of the inmate and to make appropriate recommendations for institutional and community supervision and treatment. This handbook informs the participant that prior to his release from prison, SOMP clinical staff prepare a comprehensive discharge report and risk assessment that is sent to the program participant's United States Probation Officer (USPO). The SOMP Inmate Handbook indicates that the psychological evaluation and discharge report may be based on information from a variety of sources, including a series of interviews, questionnaires, psychological tests, physiological assessment, observation, file review, and clinical judgment. While an inmate's participation in interviews and psychological testing may be helpful in the evaluation process, it is not necessary; the evaluation is completed whether or not an inmate discloses information. Inmates are not required to provide incriminating information and may decline to answer specific questions without penalty. The SOMP Inmate Handbook also states that BOP staff are charged with protecting every inmate's confidentiality as defined by policy, such that the confidentiality of program participants is protected at all times, except in cases where there is potential harm to self or others, when the security of the correctional institution is threatened, or when there is suspected child abuse.

Based on the above findings, your Request for Administrative Remedy is denied.

If you are dissatisfied with this response, you may appeal to the Regional Director, Northeast Regional Office, U.S. Customs House - 7th Floor, 2nd and Chestnut Streets, Philadelphia, PA 19106. Your appeal must be received in the Regional Office within 20 days from the date of this response.

_____          _____
David L. Winn, Warden                              Date    7/19/5

**EXHIBIT J**

U.S. Department of Justice
Federal Bureau of Prisons

# Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: __FOX, CHARLES M.__ _____ __02972-088__ ___ __E-B__ ___ __FMC DEVENS__
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A—REASON FOR APPEAL**   I would suggest that the Regional Director gave me the PSF and that He over extended his authority. You say that SOMP is a mandatory correctional management program whose primary goal is to help sex offenders manage their behavior and to reduce sexual reoffending. My charge is over 25 years old and there is nothing else in my file to even suggest that I might reoffend! You also state that 18 U.S.C., Section 3621, gives the Bureau of Prisons the general authority to establish programs. I would suggest that for the BOP to establish the SOMP Program they must have a BOP Program Statement in support of said program. Since there isn't a B.O.P. Program Statement, only a Devens Statement, I have to assume that this program isn't sanctioned by the B.O.P. Also, when you talk of the SOMP Handbook, we must not overlook the fact that it is like the Devens Program Statement, it is printed by Devens and not by the B.O.P. On July 9, 2004 when I saw the SOMP Staff I signed no papers and asked no questions. As I argued then and now, the SOMP Program is an illegal program not sanctioned by the B.O.P. Program Statement and that according to Simmons v. Nash 361 F. (D-NJ 2005) it clearly provides in Section 4042(c) only the current federal offence for which the prisoner is incarcerated can act as a trigger for the sex offender designation. Therefore, it is concluded to the extent of the B.O.P. regulations include as qualifying offences convictions other than the current, federal offence for which the prisoner is incarcerated, the regulations are invalid. I would ask that my half-way house 10% be reinstated

__07/28/05__ _____ _Charles M. Fox_ _____
      DATE                                      SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____ _____
      DATE                                    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: __379884-R1__

**Part C—RECEIPT**

                                     CASE NUMBER: _____

Return to: _____ _____ _____ _____ _____
             LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT

**EXHIBIT K**

AUG-03-2005  14:31          FMC DEVENS WARDEN                         978 7961118    P.01/04

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

_Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse._

From: Fox Charles M.                  02972-088        H-4          FMC Devens
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.        UNIT         INSTITUTION

**Part A– INMATE REQUEST** As per Simmons V. Nash 361 F. Supp. 2d (D-NJ 2005) it clearly provides in Section 4042(c) only the current federal offence for which the prisoner is incarcerated can act as a trigger for the sex offender designation. Therefore, it is concluded, to the extent of the BOP regulations include as qualifying offences convictions other than the current federal offence for which the prisoner is incarcerated, the regulations are invalid.

    The court further noted that Section 4042(c) lists only federal crimes. That led it to conclude that the provision that additional offences may be "designated by the Attorney General as sexual offences" refers as well to only Federal offences. Furthermore, the court said, since the statute deals with only Federal prisoners, state convictions can only be for prior offences.

    It is from this court ruling that I would argue that because my sentence is over 25 yrs. old and that it was a state offence, that you, (BOP) can't give me a PSF (Public Safety Factor) thus not qualifying me for the sex offender status. I would ask that my PSF be removed and that I be taken off the registration and notification list. I would also ask that all of my privilige lost because of this classification be returned.

__06/13/05__                              __Charles M. Fox__
DATE                                      SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED
JUN 14 2005
FMC DEVENS
WARDEN'S OFFICE

_____                        _____
DATE                                      WARDEN OR REGIONAL DIRECTOR

_If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response._

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE          CASE NUMBER: 319320-F1

                                                         CASE NUMBER: _____

**Part C– RECEIPT**
Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____                        _____
DATE                                      RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)
APRIL 1982
USP LVN

# EXHIBIT L

## FEDERAL MEDICAL CENTER, DEVENS, MASSACHUSETTS
## RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY, #379326-F1

The following is in response to your Request for Administrative Remedy dated June 13, 2005, in which you indicate that a recent court ruling ("Simmons v. Nash"), determined that only current federal sex offense convictions can be used to classify an offender with a Public Safety Factor (PSF) of "Sex Offender". You indicate that because your sex offense conviction "is over 25 yrs. old and that it was a state offense," the Bureau of Prisons "can't give [you] a (PSF) Public Safety Factor." You are requesting that your PSF be removed, that you be taken off the registration and notification list, and "that all of [your] privileges lost because of this classification be returned."

An investigation into your request revealed the following: Records indicate that you are currently serving a 37 month term of incarceration for Felon in Possession of a Firearm. Records also indicate you have been assigned the Public Safety Factor (PSF) of "Sex Offender" pursuant to Bureau of Prisons Program Statement 5100.07, Security Designation and Custody Classification Manual. According to your Pre-Sentence Investigation (PSI), you were convicted of Sexual Assault, Second Degree, in the state of West Virginia, on August 18, 1981. For this sex offense, you were sentenced to 5 to 10 years of incarceration. Although this sex offense conviction occurred many years ago in the state of West Virginia, your conviction of this crime is sufficient for the application of the PSF, based on current Bureau of Prisons policy. Pursuant to Program Statement 5100.07, the criterion for the "Sex Offender" PSF is to be applied to a male inmate whose behavior, **during his current term of confinement or prior history,** includes "engaging in sexual contact with another person without obtaining permission to do so," "any sexual contact with a minor or other person physically or mentally incapable of granting consent,"and/or "any offense referenced in the Sex Offender Notification and Registration Program Statement" (emphasis added). As Bureau of Prisons Program Statement 5100.07 is currently in effect, the PSF has been appropriately applied.

Program Statement 5141.02, Sex Offender Notification and Registration, indicates that unit staff must follow the notification procedures outlined in that program statement for any inmate who has a current or past conviction for specific sex offenses listed in 18 U.S.C. 4042(c)(4)(A) through (D). P.S. 5141.02 also states, "Under 18 U.S.C. 4042(c)(4)(E), the Attorney General is authorized to designate additional offenses as sexual offenses for the purpose of sex offender release notification and other related purposes. This authority has been delegated to the Director." P.S. 5141.02 lists offenses identified by the Director of the Bureau of Prisons as offenses for which unit staff must follow the notification procedures outlined in P.S. 5141.02. Among the offenses identified by the Director, are "Any offense under the law of any jurisdiction that involved: (1) **Engaging in sexual contact with another person without obtaining permission to do so (forcible rape, sexual assault, or sexual battery);** (2) Possession, distribution, mailing, production, or receipt of child pornography or related paraphernalia; (3) Any sexual contact with a minor or other person physically or mentally incapable of granting consent (indecent liberties with a minor, statutory rape, sexual abuse of the mentally ill, rape by administering a drug or substance); (4) Any sexual act or contact not identified in paragraphs (a)(1) through (3) of this section that is aggressive or abusive in nature (rape by instrument, encouraging use of a minor for prostitution purposes, incest); and (5) An attempt to commit any of the actions described in paragraphs (a) (1) through (4) of this section" (emphasis added). Again, based on current Bureau of Prison policy, your 1981 conviction for Sexual

Assault, 2nd Degree, in the state of West Virginia, qualifies as an offense identified under P.S. 5141.02, that is "Any offense under the law of any jurisdiction that involved: (1) Engaging in sexual contact with another person without obtaining permission to do so (forcible rape, sexual assault, or sexual battery)." As Program Statement 5141.02 is still in effect, Bureau of Prisons staff are "required to provide release and registration information (offender's name, criminal history, projected address, release conditions or restrictions) to state/local law enforcement and registration officials" prior to your release.

Given the aforementioned, your Request for Administrative Remedy is denied.

If you are dissatisfied with this response, you may appeal to the Regional Director, Northeast Regional Office, U.S. Customs House, 7th Floor, 2nd and Chestnut Streets, Philadelphia, PA 19106. Your appeal must be received in the Regional Office within 20 days from the date of this response.

_____                    _____
David L. Winn, Warden                       Date  7/5/5

**EXHIBIT M**

U.S. Department of Justice

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: FOX, CHARLES F.                    02972-088        H-B        FMC DEVENS
        LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A—REASON FOR APPEAL** Even though I quoted ("Simmons v. Nash") in my BP-9, you neglected to respond to this important case. It is through this case that I base my contention that you-BOP can't assign me a Safety Factor. Even though this isn't a First Circuit Case, it certainly indicates which way the court is leaning. This case clearly states that " only the current Federal offence for which the prisoner is incarcerated can act as a trigger for the sex offender designation." Since my case is over 25 years old, and a State case, I would suggest that the BOP can't designate me as a sex offender. The BOP uses Program Statement 5100.07, Security Designation and Custody Classification Manual, as your authority for the Public Safety Factor. It is my contention that if Simmons v. Nash 361 F. Supp. 2d (D-NJ 2005) is in fact the intention of Congress, You, the BOP have failed to interpert this statue correctly and should not have applied a Public Safety Factor to my case. If this is the case then I would suggest that this court case would override any program statement the BOP might use to argue against it. Simmons v. Nash is in direct conflict with the BOP's Program Statement and I would ask that the BOP reconsider its stand on this issue and do away with my current Public Safety Factor.

_07/11/05_                                    _Charles M. Fox_
       DATE                                          SIGNATURE OF REQUESTER

**Part B—RESPONSE**

---

_____                    _____
       DATE                                          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 579326-R1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**EXHIBIT N**

**FOX, Charles**
Reg. No. 02972-088
Appeal No. 379326-R1
Page One

---

### Part B - Response

You appeal the decision of the Warden at FMC Devens to deny your
request to remove your Sex Offender Public Safety Factor (PSF).
You state your prior state sexual offense conviction should not
support a PSF based on the court decision in <u>Simmons v. Nash</u>.
You request the PSF be removed from your Custody Classification
sheet.

Program Statement 5100.07, <u>Security Designation and Custody
Classification Manual</u>, indicates the PSF, Sex Offender, will be
applied for an inmate whose behavior in the current term of
confinement or prior history involved any sexual act or contact
that is aggressive or abusive in nature. Attempts are to be
treated as if the sexual act or contact was completed.

Records indicate, on August 18, 1981, you were convicted in
Greenbrier County Circuit Court, West Virginia of Second Degree
Sexual Assault. On July 25, 1984, you began service of your five
to 10 years sentence, and served five years before your release
in July 1989. Based on your convicted offense, we find the PSF
of Sex Offender is appropriately applied. The <u>Simmons</u> decision
reviewed an interpretation of the Notice of sex offender release
provisions of 18 U.S.C. § 4042(c). This court decision did not
conclude it was improper for the Bureau to consider the nature of
prior convictions in reaching classification decisions, which
include the application of a PSF. Accordingly, your appeal is
denied.

If you are dissatisfied with this response, you may appeal to the
General Counsel, Federal Bureau of Prisons. Your appeal must be
received in the Administrative Remedy Section, Office of General
Counsel, Federal Bureau of Prisons, 320 First Street, N.W.,
Washington, D.C. 20534, within 30 calendar days of the date of
this response.

Date: August 11, 2005

D. SCOTT DODRILL
Regional Director

# EXHIBIT O

AUG-03-2005  14:34          FMC DEVENS WARDEN          978 7961118    P.02/04

**U.S. DEPARTMENT OF JUSTICE**                    REQUEST FOR ADMINISTRATIVE REMEDY
*Federal Bureau of Prisons*

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | FOX, CHARLES M. | 02972-038 | B-B | FMC DEVENS |
|---|---|---|---|---|
| | **LAST NAME, FIRST, MIDDLE INITIAL** | **REG. NO.** | **UNIT** | **INSTITUTION** |

**Part A- INMATE REQUEST**

I would suggest to you that with all the programs I have completed, my excellent work reports, no write-ups in the two years that I have been incarcerated and my FRP child support paid that you don't have the evidence to support your finding of POOR INSTITUTIONAL ADJUSTMENT. You have used my refusal to participate in a non-mandatory program as the reason for this heading (SOMP) You have nothing but a Devens Statement and a Memo from the Regional Director trying to make this program mandatory. I would suggest to you that without a Congressional Mandate, BOP Program Statement or Judges Order, that this cannot be used to classify me as POOR INSTITUTIONAL ADJUST-MENT. You have taken my half-way house and classified me under this heading all because I refused one non-mandatory program and all of the other programs that I have completed you just refuse to recognize. You have used this program to justify a denial of everything that I have requested while I have been at FMC Devens. Even though there have been numerous cases dealing with the Public SAFETY FACTOR YOU use to try and force me to take this program, you continue to refuse me anything because of this program (SOMP). Again, I have went to my Team Evaluations Four times in the past and there was never anything said or implied that I had a POOR INSTITUTI-ONAL ADJUSTMENT PROBLEM. Only when I asked about my half-way house did the Team come up this garbage. If you want to take my half-way house, take it, but imply that I have refused to conform to BOP Standards when I have a exemplary record. I would ask that you remove this heading from my record or give me the formula used in determining it.

| 6/23/05 | *Charles Fox* |
|---|---|
| **DATE** | **SIGNATURE OF REQUESTER** |

**Part B- RESPONSE**

RECEIVED
JUN 28 2005

---

| **DATE** | **WARDEN OR REGIONAL DIRECTOR** |
|---|---|

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE          CASE NUMBER: 380111-F1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C- RECEIPT**                                        CASE NUMBER: _____

Return to: _____

| | **LAST NAME, FIRST, MIDDLE INITIAL** | **REG. NO.** | **UNIT** | **INSTITUTION** |
|---|---|---|---|---|

SUBJECT: _____

| **DATE** | **RECIPIENT'S SIGNATURE (STAFF MEMBER)** |
|---|---|

USP LVN                                                    BP-229(13)
                                                           APRIL 1982

**EXHIBIT P**

**FEDERAL MEDICAL CENTER, DEVENS, MASSACHUSETTS**
**RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY # 382111-F1**

This is in response to your Request for Administrative Remedy in which: 1) the phrase " poor institutional adjustment" be removed from your record or the formula used to determine this heading be provided to you; 2) you allege that the rationale to support the finding of poor institutional adjustment was based on your refusal to participate in the "non-mandatory" Sexual Offender Management Program (SOMP); and 3) you attest your halfway house placement has been denied based on non-participation in SOMP.

An investigation into your request revealed the following: On July 8, 2004, you were provided a copy of the Sex Offender Management Program Inmate Handbook, as an inmate guidance document for participation in the SOMP. You refused to sign and acknowledge receipt of the handbook in front of witnesses. Your allegation that this is a non-mandatory program is incorrect. Page one of this handbook clearly describes the SOMP as a mandatory program for all Public Safety Factor (PSF) inmates whose security classification is LOW or MEDIUM. Since you have the Sex Offender PSF applied and a LOW security classification, you are required to participate in the SOMP. Since you refused to participate in this mandatory program, you are subject to the sanctions listed on page 4 of the Sex Offender Management Program Inmate Handbook, as well a Regional Director memorandum titled Sex Offender Management Program (SOMP), dated March 3, 2004. This memorandum also addressed the same non-participation sanctions. Included in these sanctions is a curtailment of Community Corrections Center placement.

The phrase "poor institutional adjustment" in your records reflects your refusal to participate in the mandatory SOMP. This statement can apply to a failure to participate in multiple mandatory programs or a single mandatory program. Based upon your overall institutional adjustment, which includes program participation, unit team members have included this phrase due to your failure to comply with the mandatory SOMP.

Based upon the above findings, your Request for Administrative Remedy is denied.

If you are not satisfied with this decision, you may appeal to the Regional Director at: Bureau of Prisons, Northeast Regional Office, U.S. Customs House - 7th floor, 2nd and Chestnut Streets, Philadelphia, Pennsylvania, 19106. Your appeal must be received in the Northeast Regional Office within 20 days of this response.


_____                           _7/26/5_____
David L. Winn, Warden                              Date

# EXHIBIT Q

07/26/2005  12:58    9787961364          PSYCHOLOGY SERVICES                PAGE  02/09

`* LIMITED OFFICIAL USE **
                        FEDERAL BUREAU OF PRISONS
                               FMC DEVENS
                        POBOX 880, AYER, MA 01432

                             SOMP HANDBOOK
                              July 8, 2004
                FOX, CHARLES  Reg #: 02972-088 Unit: H UNIT


Staff in the Sex Offender Management Program (SOMP) met with Mr. Fox today
for the purpose of providing him with the SOMP Inmate Handbook, and to answer
any questions he may have about his participation in the SOMP.  His questions
were answered.

Although he read the Handbook, and his questions about the program were
answered, he refused to sign a form acknowledging he is aware of his
involvement in the SOMP.

He declined an opportunity to take a copy of the Handbook with him.  He was
informed he could submit a "copout" to Dr. Renaud, SOMP Coordinator, should
he require additional opportunities read the Handbook.


_____

BISCI, SHERRI