UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARLES FOX, )
 )
 Petitioner, ) Civil No. 05-40106 (WGY)
 )
 )
v. )
 )
HARLEY LAPPIN, ET AL., )
 )
 Defendants. )

## PLAINTIFF'S REPLY AND OBJECTIONS TO RESPONDENTS' RESPONSE

Once upon a time there was a king of Armenia, who, being of a curious turn of mind and in need of some new diversion, sent his heralds throughout the land to make the following procolamation: "Hear this! Whatever man among you can prove himself the most outrageous liar in Armenia shall receive an apple made of pure gold from the hands of His Majesty the King!"

People began to swarm to the palace from every town and hamlet in the country, people of all ranks and conditions, princes, merchants, farmers, priests, rich and poor, tall and short, fat and thin. There was no lack of liars in the land, and each one told his tale to the king.

A ruler, however, has heard practically every sort of lie, and none of those now told him convinced the king that he had

listened to the best of them. The king was beginning to grow tired of his new sport and was thinking of calling the whole contest off without declaring a winner, when there appeared before him a poor, ragged man, carrying a large earthenware pitcher under his arm.

"What can I do for you?" asked His Majesty.

"Sire!" said the poor man, slightly bewildered. "Surely you remember? You owe me a pot of gold, and I have come to collect it."

"You are a perfect liar, sir!" exclaimed the king. "I owe you no money!"

"A perfect liar, am I?" said the poor man. "Then give me the golden apple!"

The king, ,realizing that the man was trying to trick him, started to hedge. "No, no. You are not a liar!"

"Then give me the pot of gold you owe me, sire," said the man.

The king saw the dilemma. He handed over the golden apple. "THE LIAR," ARMENIAN FOLK-TALES AND FABLES. RETOLD BY Charles Downing, 1993.

While Massachusetts is not Armenia, if this Court were sitting as King, it would have to split the golden apple between attorney Diana Jacobs Lee and other BOP officials for the best prevaricator. Plaintiff Charles Fox, (Fox), acting pro se, humbly and respectfully files his Reply and Objections to the

Respondent's Response to his Petition for Declaratory Judgment.

Fox submits in this pleading, proof that there is no up and running Sex Offender Management Program (SOMP) at Devens and that he should not have been cheated out of his six month halfway house for allegedly failing to participate in a program that is not up and running. See attached Exhibit A.

Fox objects to the Respondent's Response (R. Resp.) at page 2. Fox is awaiting responses from the Bureau of Prisons (BOP) Central Office Office in Washington, DC, for the final answer to his BP-11, the last stage of the Administrative Remedy process. Fox also objects that the BOP properly exercised its congressionally delegated discretion in applying the sex offender Public Safety Factor (PSF) to him for a state sex offense conviction. Id.

Fox further objects that "denying petitioner a transfer to a halfway house because he refused to participate in the SOMP." Since Fox submits proof that there is no up and running SOMP Program, there can be no refusal to participate in something that does not exist.

Fox objects to the R.Resp. at 2 in that the BOP has properly construed the term "sexual offense" as that term is used in 18 U.S.C. § 4042(c)(4)(E). Further, Fox avers that Simmons v. Nash, 361 F.Supp.2d 452 (D.N.J. 2005) is decided correctly and respectfully asks the Court to adopt its reasoning to Fox's case.

It is interesting to note that BOP Officials have asked Fox to settle this matter out of court. Hanging over the Respondent's head like the Sword of Damocles, Fox asks the Court for the safeguards of Justina.

Fox objects to the R. Resp. at 3, Section B. The BOP's Internal Use of the Sex Offender PSF is wrong. Fox further objects to Section B, 1 at pages 3, 4 of the R. Resp. According to the Respondent's Exhibit F, page 1, the SOMP Handbook, "[t]he primary goal of the SOMP is to help sexual offenders manage their behavior in order to reduce sexual re-offending."

Well, gee, that certainly is an admirable goal and Fox sincerely hopes that the alleged SOMP program one day, or someday, when it is up and running, will help some of the wackos and child molesters that Fox currently lives with at FMC Devens. What does this goal have to do with Fox, whose sex offense is over 20 years old and he has had no re-offending since? Hello. The answer is "nada." Zip. Zilch. Zero. The SOMP program is not made for Fox, however due to the design of it for whatever reasons (funding?), Fox has been sucked into the vortex of the black hole and has been punished for allegedly failing to "volunteer" for parts of the alleged SOMP program that is not up and running.

In point of fact, the <u>only</u> sanctions for failing to participate in the not yet up and running SOMP program, according to the SOMP handbook are:

> **<u>Sanctions for Non-compliance with SOMP Requirements</u>**
>
> 1. Failure to follow SOMP recommendations may also result in the following sanctions:
> a. Inmate Performance pay not to exceed the Maintenance pay level.
> b. Assignment to the least preferred housing available.
>
> 2. Specific violations of the mandatory program requirements are subject to the Inmate Disciplinary Process.

<u>See</u> R. Resp, Exhibit F, at page 4 of 7.

4

Fox objects to the R. Resp. at 4. The BOP should not be making prisoners with state sex offense convictions register federally.

Fox objects to the R. Resp at 5. Fox submits as Exhibits B, and C, the ansewer from D. Scott Dodrill, the Northeast Regional Director denying both Fox's PSF and Halfway house BP-10s. See attached. Fox has now in the mail, his BP-11s to BOP Central Office, Washington and once those are answered, the end of the Administrative Remedy line is satisfied.

In a footnote, AUSA Gregg Shapiro states: "petitioner has not explained why he waited so long to initiate the administrative remedy process in the first place." R.Resp. at 5. Fox will answer: he was in fear of retaliation by BOP officials for filing in the first place. Fox has witnessed more than one prisoner get the free vacation off to the hole on the ole investigation tactic that ruins an prisoners life for the exercising of his constitutional rights to the Administrative Remedy process. With Fox being so short to leave prison, the probabilities of trumped up investigation claims and the ever vague "security" mantra lessen.

Fox objects to the R. Resp. at page 7, Argumant A. Ausa Shapiro cites wonderful case law on pages 7-10 about the whole failing to file administrative remedies process. However, as Fox has stated ante, Fox has filed Administrative Remedies and is waiting for the answer (perhaps Washington will grant Fox his request to remove the PSF and give him what is left of his halfway house) from BOP Central office. Fox respectfully asks the Court not to dismiss his petition on these grounds.

5

Another reason that Fox has waited so long to file Administrative Remedies, if, indeed, one is needed, is threefold. First, all prisoners in SOMP, when they file Administrative Remedies, have their answers from the Warden or Region, or Central Office Washington come back identifying them as SOMP weirdos. The Administrative Remedy in Fox's case says: H-SOMP. H for the Unit Fox lives and SOMP to put the Scarlet Letter on Fox and make sure that all the other prisoners who are <u>not</u> in the not yet up and running SOMP, know that Fox is in SOMP. This is a security breach and endangers the well-being of <u>all</u> SOMP prisoners.

Second, Fox had no reason to file earlier, as he did not anticipate BOP Officials screwing him out of his half-way house for failing to sign up for the not yet up and running SOMP program. Simply put, Fox had no reason to file. In point of fact, had BOP Officials just gave Fox his six month halfway house, Fox would have not filed this pleading and needless money would not have to be spent defending such action.

Third, Fox had to conduct his own investigation. That investigation lead to a FOIA disclosure from Washington to another inmate that the BOP is using Inmate Trust Funds to fund the not yet up and running SOMP. $30,000 was taken from the Inmate trust fund last year for SOMP. <u>See</u> attached Exhibit D. The legality of using Inmate Trust Funds to benefit only a small part of the class of prisoners is not before the Court, however, it does raise an eyebrow, especially since there is no up and running SOMP.

Fox objects to the R. Resp at 10. Fox has shown the Court that he has pursued the Administrative Remedy process and is awaiting the BOP Central Office answer, which, as usual, gets delayed past the stated time (30 days). Fox argues that he has demonstrated a likelihood of success on the merits, citing Simmons v. Nash.

Moreover, Fox has shown the Court that there is no up and running SOMP program at FMC Devens and therefore, he was penalized for a program that does not exist. What kind of poppycock is that? Injunctive relief, it is respectfully suggested, should be granted.

Fox objects to the R. Resp at 11. The BOP and SOMP punish a prisoner for not volunteering for the alleged voluntary parts of the not yet up and running SOMP. In Respondent's Exhibit F at page 4, it states that some parts of the SOMP are voluntary. Id. Yet, SOMP Officials make a prisoner sign a waiver of their privacy act rights and an agreement not to sue Nichols & Molinder Assessments and FMC Devens. See attached Exhibit E. So, if the prisoner doesn't sign, no halfway house. This kind of tactic is known in some circles as Extortion. This is not a proper exercise of the BOP's congressionally-delegated discretion. Fox objects.

Just like the holding in Saucier v. Katz, 533 US 194 (2001), which decided an officer's entitlement to qualified immunity in a Bivins v. Six Unknown Fed., Narcotics Agents, 403 US 388 (1971) case, its holding is equally applicable to cases filed under Title 42 U.S.C. § 1983. So to is Simmons, supra, to the authority and discretion of the BOP to classify an inmate as a

7

sex offender based upon past <u>state</u> convictions.

Fox objects to the R. Resp. at 11, 12. AUSA Shapiro again cites wonderful case law on a prisoner having no right to a halfway house. It is indeed, encouraging that there are AUSAs in the U.S. Attorneys who actually earn their pay and are able to competently cite case law.

However, we all know here that Fox was denied a halfway house not because of any legitimate reason. Fox's prison record is spotless. No disciplinary reports. Excellent work reviews. In point of fact, Fox's institutional record indicated he is a model prisoner. It's just that he didn't go along with the ruse of the not yet up and running SOMP. He did not sign away his privacy act rights and agree not to sue the officials in charge of this charade (scam is an ugly word and Fox does <u>not</u> call this SOMPSCAM).

Fox objects to the R. Resp at 13. Had Fox not been classified as a sex offender based upon his past <u>state</u> conviction, he would not have been "kidnapped" from Loretto Pennsylvania prison where he was for 11 months, earning a decent wage working in a real prison. At this point, since Fox's six month halfway house is being cut into, he respectfully asks the Court for an Injunction.

Fox objects to the R. Resp. at 13, 14 & 15. <u>Simmons</u> is decided correctly. Fox objects to giving <u>Chevron</u> deference. Fox cites and asks this Court to adopt the reasoning of <u>Moreland v. Federal Bureau of Prisons</u>, 363 F.Supp.2d 882 (S.D. Tex. 2005) to show that <u>Chevron</u> deference is not applicable here. Fox objects to the R. resp at 16. The government here is trying to use a

red herring tactic here and Fox urges the Court not to follow it. The reasoning of Simmons is why the Court should adopt the same and grant Injunctive Relief forbidding the BOP from using past state convictions for notification.

Fox files this pleading at his peril and should he get lugged to the hole (God forbid) on trumped up charges, then so be it. Perhaps BOP officials will have the decency to admit wrong here and stop punishing prisoners for not participating in a not yet up and running program. It is a lot to ask, nonetheless, Fox asks.

## CONCLUSION

Fox's petition should be granted.

Respectfully submitted,

Charles Fox, pro se
Reg. No. 02972-088
FMC Devens
P.O. Box 879
Ayer, MA 01432-0879
Dated: September 7, 2005

9

## CERTIFICATION

I hereby certify that a copy of the foregoing has been mailed postage prepaid first class to:

AUSA Gregg Shapiro
One Courthouse Way
Boston, MA 02210

&

Attorney Judith H. Mizner
AFP Defender
Federal Defender Office, D. Mass.
408 Atlantic Ave.
Boston, MA 02110
(617) 223-8061

by placing in the prison legal mailbox this 7th day of September, 2005.

*Charles M. Fox*
Charles M. Fox

# FEDERAL PUBLIC DEFENDER
## WESTERN DISTRICT OF NEW YORK

JOSEPH B. MISTRETT
**FEDERAL DEFENDER**
joseph_mistrett@fd.org

KIMBERLY A. SCHECHTER
**ASSISTANT DEFENDER**
kimberly_schechter@fd.org

300 PEARL STREET, SUITE 450
BUFFALO, NEW YORK 14202

716-551-3341
FAX: 716-551-3346

ROCHESTER OFFICE
28 EAST MAIN STREET
FIRST FEDERAL PLAZA - SUITE 400
ROCHESTER, NEW YORK 14614
585-263-6201
585-263-5871-FAX

*REPLY TO:* BUFFALO

August 18, 2005

**LEGAL MAIL**
**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**

Mr. Kenneth J. Happy
**USM No. 13068-055** HB
c/o FMC Devans
P. O. Box 779
Ayer, Massachusetts   01432

    Re:  *United States v. Kenneth J. Happy*
           04-CR-85-S

Dear Mr. Happy:

    I spoke to Dr. Renaud. She confirmed that the Sex Offender Program at Devans is not up and running. I asked her to speak to you about possibly being transferred to Butner's Sex Offender Program which is much more involved and may be a better fit for you. I also discussed with her your other diagnosis of bi-polar disease and she is aware of all of this and is going to speak to you.

    I hope this helps.

                              Very truly yours,

                              Kimberly A. Schechter
                              Assistant Federal Defender

KAS:js

"A"

FOX, Charles
Reg. No. 02972-088
Appeal No. 379326-R1
Page One

---

### Part B - Response

You appeal the decision of the Warden at FMC Devens to deny your request to remove your Sex Offender Public Safety Factor (PSF). You state your prior state sexual offense conviction should not support a PSF based on the court decision in <u>Simmons v. Nash</u>. You request the PSF be removed from your Custody Classification sheet.

Program Statement 5100.07, <u>Security Designation and Custody Classification Manual</u>, indicates the PSF, Sex Offender, will be applied for an inmate whose behavior in the current term of confinement or prior history involved any sexual act or contact that is aggressive or abusive in nature. Attempts are to be treated as if the sexual act or contact was completed.

Records indicate, on August 18, 1981, you were convicted in Greenbrier County Circuit Court, West Virginia of Second Degree Sexual Assault. On July 25, 1984, you began service of your five to 10 years sentence, and served five years before your release in July 1989. Based on your convicted offense, we find the PSF of Sex Offender is appropriately applied. The <u>Simmons</u> decision reviewed an interpretation of the Notice of sex offender release provisions of 18 U.S.C. § 4042(c). This court decision did not conclude it was improper for the Bureau to consider the nature of prior convictions in reaching classification decisions, which include the application of a PSF. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: August 11, 2005

D. SCOTT DODRILL
Regional Director

"B"

**FOX, Charles**
Reg. No. 02972-088
Appeal No. 379884-R1
Page One

---

### Part B - Response

You appeal the decision of the Warden at FMC Devens to deny your request for community corrections center (CCC) placement because of your refusal to participate in the Sex Offender Management Program (SOMP). You state the Regional Director overextended his authority in applying the Public Safety Factor (PSF) of Sex Offender. You also state the SOMP is an illegal program not sanctioned by the Bureau of Prisons (BOP). You state according to <u>Simmons v. Nash</u>, only current federal offenses can be used in determining the sex offender designation. As relief, you request that your halfway house ten percent date be reinstated.

An investigation into your appeal revealed that in Regional Appeal No. 379626-R1, you were advised of the reasons in support of application of the PSF. This issue will not be addressed again in this response. As the Warden stated, when you were placed in the SOMP, you were advised your participation in that program will be considered in assessing your placement in community programs, including transfer to a community corrections center. Records reveal you have failed to participate in the SOMP and were not recommended for CCC placement based on your poor institutional adjustment. We concur with the Warden's sound correctional judgement in denying a recommendation for CCC placement. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: August 29, 2005

D. SCOTT DODRILL
Regional Director

"C"



U.S. Department of Justice

Federal Bureau of Prisons

Washington, DC 20534

JUL -5 2005

▮▮▮▮▮▮▮▮
Register No. ▮▮▮▮▮
FMC Devens
P.O. Box 880
Ayer, MA 01432

For Further Inquiry Contact:
Federal Bureau of Prisons
320 First Street, N.W.
Room 841 HOLC Building
Washington, DC  20534

Re:   Request No. ▮▮▮▮▮

Dear Mr. ▮▮▮▮

In response to your March 3, 2005 Freedom of Information Act request for certain accounting information regarding funding from the Inmate Trust Fund for psychology programs at FMC Devens and FMC Butner, two pages entitled "Operating Plan Status" are enclosed.

I trust this information is responsive to your request.

Sincerely,

*Deborah Farrell*
Wanda M. Hunt
Chief, FOIA/PA Section

PAGE   1

REPORT NO. $IOP4
OPERATING PLAN STATUS
BY DU BY COST CENTER BY OCCD
ON 06/17/05 AT 13.31.03
IF COSTCTR IS 0785

| APPCD | INSTITUTION | DU | COSTCTR | PROJ3 | OCCD | STQ1 | HTQ2 | HTQ3 | HTQ4 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| X4 | FMC DEVENS | 2 | 0785 | NA | 260CC | --- | 15.0 | 7.5 | 7.5 | 30.0 |
| *TOTAL COSTCTR 0785 | | | | | | | 15.0 | 7.5 | 7.5 | 30.0 |
| *TOTAL DU 2 | | | | | | | 15.0 | 7.5 | 7.5 | 30.0 |
| *TOTAL INSTITUTION FMC DEVENS | | | | | | | 15.0 | 7.5 | 7.5 | 30.0 |
| *TOTAL APPCD X4 | | | | | | | | | | |
| TOTAL | | | | | | | 15.0 | 7.5 | 7.5 | 30.0 |

Total Amount For Sex Offender Management Program

FEDERAL MEDICAL CENTER - DEVENS
DEVENS, MASSACHUSETTS

INFORMED CONSENT FOR PSYCHOSEXUAL TESTING

I understand that I will be administered the Multiphasic Sex Inventory II (MSI II). The purpose of the testing is to help identify psychological/sexual problems, if any, that may exist. Specifically, the test data is used:

1) to help develop hypotheses about psychological problems I may be experiencing;
2) to help develop hypotheses about any sexual problems I may be experiencing such as sexual desires, obsessions, dysfunction, sex knowledge and deviant or atypical sexual behaviors;
3) for reporting treatment progress that I may have made;
4) to provide ongoing research data which is used to better understand individuals who may have problems.

I further understand that the testing data I complete will be forwarded to Nichols & Molinder Assessments in the State of Washington. The tests will be scored there and interpreted by Nichols & Molinder Assessments. All material forwarded will be identified by my initials or a code number only. My name will not be divulged, nor will any other identifying information (address, social security number, etc.). I will agree to put only my initials or agency code number on all test answer sheets and forms. However, my age, education level, usual occupation, marital status, race, sex and reason for taking the testing will be included on test materials. I understand that this information is needed in combination with the test results to more specifically address the objectives stated above.

Lastly, I understand that by signing this release/informed consent form, I agree to all terms and conditions contained herein and that I indemnify and hold harmless Nichols & Molinder Assessments and FEDERAL MEDICAL CENTER - DEVENS.

_____          _____
Signature                              Date

I certify that I have received a copy of this signed Informed Consent:

_____          _____
Signature                              Date

_____          _____
Witness                                Date

F