UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES FOX,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   C.A. No. 05-40106-WGY |
| HARLEY LAPPIN, et al.,<br>    Defendants | )<br>)<br>)<br>) |

**MEMORANDUM OF AMICUS CURIAE ADDRESSING RESPONDENTS'
SUBSTANTIVE ARGUMENTS**

**Relevant Facts**

Based on the documents attached to the declaration of Diana Jacobs Lee, Assistant Regional Counsel at the Northeast Regional Office of the Federal Bureau of Prisons (hereinafter "BOP") submitted with Respondent's Response to Petitioner's Petition for a Declaratory Judgment and for a Writ of Mandamus and Preliminary Injunction, dated August 15, 2005 (D.E.[1]7, Exs. A-Q), Petitioner's Notification Concerning Completion of Administrative Remedy Process With Attachments (D.E.18) and the Declaration of Cheryl Renaud, the coordinator of SOMP (D.E.14, Attachment to Respondents' Supplemental Memorandum) amicus understands the relevant facts to be as follows.

Charles Fox is serving a thirty-seven month term of incarceration pursuant to his conviction in 2003 in the Southern District of West Virginia for being a felon in possession of a firearm (Ex.A).  In 1981, more than 24 years ago, Mr. Fox was convicted of sexual assault in the second degree in West Virginia (D.E.7, Ex.D).  The factual nature of the offense is not described

---

[1] "D.E." refers to this Court's docket entries.  "R.M." will refer to Respondents' Response to Petitioner's Petition..." (D.E.6.).

in any of his federal institutional records. There is no indication that between then and now he has committed any other sexual offense. In 1991 he received a 27 month sentence for federal marijuana offenses and was incarcerated from 4-5-91 to 1-19-93 (D.E.7, Ex.C).

Mr. Fox voluntarily surrendered at FCI Loretto at Loretto, PA on May 28, 2003 to serve his current sentence (D.E.7, Ex.A).[2] He is currently incarcerated at FMC Devens, to which he was transferred in May, 2004 for participation in the Sex Offender Management Program (SOMP) operated by Devens (see, D.E.7, Ex.G). Amicus has been unable to locate any program statement or other directive authorizing this program on the BOP website. The BOP at both the institutional and regional level has declined to provide amicus with any information concerning the authorization for the program[3].

According to the Declaration of Cheryl Renaud, the coordinator of SOMP, the program was activated on March 1, 2004 (D.E.14). According to a document on the letterhead of FMC Devens captioned "Sex Offender Management Program Inmate Handbook", dated March 1,

---

[2] The District Court recommended incarceration as close to his home as possible in a camp type minimum security facility if deemed appropriate by the BOP.

[3] The BOP website is found at *http://www.bop.gov.* P.S. 1221.66 (09/15/97) (the Directive Management Manual) describes the purposes of and authorization route for various types of documents. It emphasizes the importance of developing and implementing policies through formal directives. Amicus suggests that the BOP be ordered to provide this Court with the formal authority for the SOMP so that this Court can determine what, if any, degree of deference is due. If respondents decline to do so, amicus suggests it would be appropriate for this Court to infer that no formal directive exists, since respondents are in a position to provide the documentation.

In responses to Fox's administrative filings, the BOP asserted that the SOMP was authorized under 18 U.S.C. §3621. In terms of programs that provision, however, addresses only substance abuse treatment, mandating "appropriate substance abuse treatment" for prisoners (3621(b)). The remainder of the statute commits convicted persons to the custody of the BOP and addresses place of imprisonment.

2004, (see D.E.7, Ex.E):

> "All inmates at FMC Devens who meet the following criteria are assigned to the SOMP:
> 1. The inmate must have been assigned the Public Safety Factor of Sex Offender pursuant to Bureau of Prisons Program Statement 5100.07; and,
> 2. The inmate must have been classified as Low or Medium security pursuant to Bureau of Prisons Program Statement 5100.07." (p.2)

As set out in that document "the primary goal of the SOMP is to help sexual offenders manage their behavior in order to reduce sexual re-offending (p.1). The document further states that "the SOMP is a mandatory program assignment,..." although some components are voluntary (p.4). It also provides that "poor cooperation or failure to participate may curtail Community Corrections Center placement." (*id.*).

Based on his single, decades-old state conviction, Fox was assigned the PSF of Sex Offender and was assigned to the SOMP. According to the Warden's response to request for administrative remedy dated 7-19-05, Fox was seen by SOMP staff on June 9, 2004 and provided with verbal information about the program. He declined to sign the acknowledgment of review of SOMP handbook on July 8, 2004 (D.E.7, Ex. E, p.7; D.E.7, Ex.Q).

As indicated in a memorandum for the warden from unit manager Tony Calabro, dated May 19, 2005, the unit team recommended that Fox be denied consideration for halfway house placement[4] because he refused to participate in SOMP and "displayed poor cooperation by refusing to be interviewed or complete any testing with SOMP staff." (Ex.G).

Beginning May 25, 2005 Fox challenged the denial of halfway house placement and his

---

[4] Amicus is using the term halfway house to refer to a community correction center placement pursuant to 18 U.S.C.§3624( c).

3

classification as a sex offender, both in connection with his assignment to SOMP and the applicability of the notification provisions of 18 U.S.C. §4042(e).  He questioned the validity of the SOMP and the validity of its application to him given the age of his sex offense, lack of subsequent sex offenses and nature of his current offense.  He maintained that he was improperly classified as a sex offender based on the prior state conviction.  He was denied relief at each level of administrative review (See, D.E.7, Exs.H,I,J,K,L,M,N,O,P and D.E. 18 (petitioner's notification concerning completion of administrative remedy process with attachments)).  On October 18, 2005 the Administrator at the national level denied his appeal of the PSF classification, finding that his prior history supported the assignment and that the case Fox cited was not applicable (D.E.18, p.16).  The Administrator also denied his halfway house placement appeal, finding that his required participation in the SOMP was appropriate because of his prior state conviction for sexual assault (D.E.18, p.8).

**Issues Raised**

On June 23, 2005 Fox filed a petition seeking a declaratory judgment, a writ of mandamus, and a preliminary injunction "to restrain and enjoin the BOP from applying the provisions of 18 U.S.C. §4042( c) and remove his PSF as a sex offender".  He alleged that "because of the BOP's erroneously classifying him as a sex offender, he was denied any halfway house."

Respondents agree that Fox has been denied halfway house placement because the BOP applied the sex offender PSF based on his 1981 state conviction and he refused to participate in the SOMP.  They also maintain that BOP notification of his release to state and local authorities is required "because BOP regulations classify petitioner's state conviction as a "sexual offense"

for purposes of 18 U.S.C. §4042( c)(4)(E),...." (R.M., p.1)

Accordingly, this case challenges two actions by the BOP: 1) the denial of eligibility for halfway house placement based on Mr. Fox's refusal to participate in the SOMP; and 2) the applicability of the sex offender notification provisions of 18 U.S.C. §4042( c).

The BOP maintains that the refusal to transfer Fox to a halfway house "was a proper exercise of the BOP's congressionally-delegated discretion" (R.M., p.11); that Fox had "no right to transfer to a halfway house" because placement lies in the discretion of the BOP (*id.*, p.11-12); and that Fox has no liberty interest in transfer to a halfway house (*id.*, p.12).

The BOP maintains that giving full *Chevron* deference to the regulations promulgated by the BOPat 28 C.F.R. §571.72(a) requires upholding the reach of 18 U.S.C. §4042( c)(4)(E) to encompass prior state offenses as triggering the notification requirement.

This memorandum will address both of these issues, which hinge on the classification of Mr. Fox as a sex offender.

**Sex Offender Classification, 18 U.S.C. §4042(c ), Regulations and Program Statements**

P.S.[5] 5100.07 , the "Security Designation and Custody Classification Manual" defines the "sex offender" Public Safety Factor ("PSF") in chapter 7, p.2. It includes behavior in the current

---

[5] "P.S." refers to Program Statements issued by the BOP. A Program Statement, which is not implemented pursuant to the Administrative Procedure Act ("APA") is generally an internal agency guideline and is not owed the type of deference accorded to formal agency adjudications or notice and comment rulemaking under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). See, e.g., *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("...interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law –do not warrant *Chevron*-style deference."); *Reno v. Koray*, 515 US.50, 60-61 (1995). However, to the extent that a Program Statement incorporates a rule promulgated in accordance with the APA, the deference due such a rule may apply.

term of confinement or prior history and lists offenses including "any offense referenced in the Sex Offender Notification and Registration Program Statement". P.S. 5141.02, addressing "Sex Offender Notification and Registration", implements 18 U.S.C. §4042( c). That statute defines a person subject to notification of release as a sex offender as a person "convicted of any of the following offenses...". It lists a number of federal offenses in paragraph 4(A)-(D) and provides in 4(E) for the inclusion of "any offense designated by the Attorney General as a sexual offense." The Attorney General delegated that authority to the Director of the Bureau of Prisons (28 C.F.R. §571.71), who exercised that authority in 28 C.F.R. §571.72, which lists those designated offenses as including "any offense under the law of any jurisdiction that involved: [*inter alia*]...(1) Engaging in sexual contact with another person without obtaining permission to do so...". That list is included in P.S. 5141.02 at p.4. Assignment of a public safety factor as a sex offender is one of the categorical bases for denial of halfway house placement. P.S. 7310.04, "CCC Utilization and Transfer Procedure" (12/16/98) provides limitations on eligibility for all CCC referrals and states that "Inmates in the following categories shall not ordinarily participate in CCC programs: a. Inmates who are assigned a 'Sex Offender' Public Safety Factor" (at p.10).

Thus, classification as a sex offender, which led both the denial of halfway house placement and the BOP intent to invoke the notification provisions is predicated here on the inclusion of past state offenses in the list developed pursuant to 18 U.S.C.§4042( c) and Mr. Fox's 24 year old state conviction. The principal question is whether the policy enunciated in 28 C.F.R. §571.72 and incorporated into P.S. 5100.07 and P.S. 5141.02 accurately implements that governing statute.

18 U.S.C. §4042( c)(4) describes those persons subject to the sex offender notification

requirement. It provides that

> "[a] person is described in this paragraph if the person was convicted of any of the following offenses...(A) An offense under section 1201 involving a minor victim. (B) An offense under chapter 109A. ( C) An offense under chapter 110. (D) An offense under chapter 117. (E) Any other offense designated by the Attorney General as a sexual offense for purposes of this subsection."

This Court reviews questions of statutory interpretation *de novo*. As the Court of Appeals stated in *Goldings v. Winn*, 383 F.3d 17, 21(1st Cir. 2004):

> "We review de novo an agency's construction of a statute that it administers, although subject to established principles of deference."....If "the language of the statute is plain and admits of no more than one meaning" or if the statute's legislative history "reveals an unequivocal answer" as to the statute's meaning, "we do not look to the interpretation that may be given to the statute by the agency charged with its enforcement."

See also, *General Dynamics Land Systems, Inc. v. Cline*, 124 S.Ct. 1236, 1248 (2004) ("Even for an agency able to claim all the authority possible under *Chevron*[6], deference to its statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent."); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S.120 (2000) (reiterating limits to deference).

"The well established approach to statutory construction begins with the actual language of the provision...When the 'plain meaning' is clear on its face, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Rivera*, 131 F.3d 222,224 (1st Cir. 1997). See also, *Sorenson v. Secretary of Treasury*, 475 U.S. 851 (1986); *Bailey v. United States*, 516 U.S. 137,144 (1995). This requires construing statutory terms "'in their context and with a view

---

[6] *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) discussed conditions for and the nature of deference to agency regulations.

to their place in the overall statutory scheme.'" *Tyler v. Cain*, 533 U.S. 656, 662 (2001); see also, *Jones v. United States*, 527 U.S. 373, 388-89 (1999) (statutory language must be read in context); *King v. St. Vincent's Hospital*, 502 U.S. 215, 221 (1991); *FDA v. Brown & Williamson Tobacco Corp.*, *supra*, 529 U.S. at 132-133. As the Court stated in *Bailey v. United States*, *supra*, 516 U.S. at 145: "We consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme. '"'[T]he meaning of statutory language, plain or not, depends on context.'"'".

Here, amicus suggests that, examining the language of the statute in the context in which it is used, the meaning is plain – the offenses triggering the status of sex offender requiring notification under §4042( c) are the federal offenses of current conviction. Accordingly, deference to the BOP interpretation of the statute, whether under *Chevron* or a less deferential standard, is not warranted.

In *Simmons v. Nash*, 361 F.Supp.2d 452 (D.N.J. 2005) the court addressed the BOP's interpretation of this same statute. An inmate incarcerated pursuant to a federal drug offense for which he was sentenced in 1997 challenged his classification as a sex offender based on a 1983 New York state conviction. The court held that the "other offenses" which could be designated by the Attorney General under §4042( c)(4)(E) (or by the Attorney General's designee) did not include prior state offenses. The court first looked to 18 U.S.C. §4042(b), which required notification upon the release of persons convicted of drug trafficking and crimes of violence, noting the similarity of the statutory language and structure. As the Fifth Circuit had found in interpreting that provision in *Henrikson v. Guzik*, 249 F.3d 395, 398-99 (5th Cir. 2001), since the requirement of notification applied upon release or a change of address while on supervised

release, it "seems virtually part of the sentence" and it would be "illogical to impose the notification requirement to run with the sentence for a crime that does not itself trigger notification.". Accordingly, the notification requirements of §4042(b) were held to be limited to offenses of current conviction within the definitions of drug trafficking or crime of violence. Noting that §4042( c) contains a parallel provision, the *Simmons* court held that that provision was also limited to offenses of current conviction within the definition of sexual offenses:

> ....§4042( c) is not ambiguous and clearly provides that only the current, federal offense can act as a trigger for the notification requirement. The BOP's implementation of §4042( c)(4)(E) through 28 C.F.R. §571.72 and P.S. 5141.02 must adhere to the plain meaning of the Statute. To the extent that they include as designated offenses convictions other than the current, federal offense for which the prisoner is incarcerated, these regulations are invalid.

361 F.Supp.2d at 457.

The *Simmons* court further concluded that the Attorney General's designation authority under the statute was limited to designating federal crimes. This was also consonant with employing the doctrines of *noscitur a sociis* (defining a word by an accompanying word; coupled words should be understood in same general sense) and *ejusdem generis* (construing general words following specific words in a statute to include only objects similar in nature to those in the preceding specific words) to analyze the regulations. Both of those doctrines support limiting the scope of regulatory authority to the designation of federal offenses. See, *Simmons*, *supra* at 457-458.

Without explaining the basis for its conclusion, the BOP maintains that the *Simmons* court's conclusion renders the section "practically meaningless" (R.M., p.14). Amicus suggests that it does not. 18 U.S.C. §4042( c)(4)(A-D) do not include all offenses in the United States

Code that could be viewed as sexual offenses. For example offenses in Title 18, chapters 71 (obscenity), 96 (Racketeering organizations), 95 (racketeering, e.g., 18 U.S.C.§§1952, 1956,1957)), 7 (assault, e.g.,18 U.S.C.§113 ), 77 (peonage and slavery, e.g., 18 U.S.C.§1591) and Title 21 (offenses dealing with date rape drugs) are federal offenses which the Attorney General could consider designating "as a sexual offense for purposes of this subsection" if he/she believed it necessary. Subsection ( c)(4)(E) also provides a mechanism for accommodating any federal sexual offenses enacted in the future without requiring amendment of §4042( c). Nor does the statute require that the Attorney General designate additional offenses.

Limiting the delegation authority to federal offenses is also consistent with a review of the text of the public law which enacted §4042 – P.L. 105-119, "The Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998". Section 115(a) of that statute added subsection ( c) to §4042 as well as amending provisions of other statutes related to sex offender registration. The captions are instructive. Section 115(a)(2) amended 42 U.S.C. §14071(a) (part of the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program) by striking paragraph 2 and inserting a new paragraph 2 which added "(7) Registration of out-of -state offenders, *federal offenders*, persons sentenced by courts martial and offenders crossing state borders." and requires states to "ensure that procedures are in place to accept registration information from –...residents who were...*convicted of a Federal offense*...". (emphasis added). Section 115 (a)(8) is headed "*Federal offenders* and military personnel" and amends 18 U.S.C. §4042 by inserting the language now codified at 18 U.S.C. §4042( c) (emphasis added).

The term "federal offender" in 115(a)(2) plainly refers to individuals convicted of a

federal sex offense. Applying the rule of intra-statutory consistency as part of the contextual analysis, the same term, used in another subsection of the same statute, should also be construed as referring to individuals convicted of a federal offense. As the Court stated in *Sorenson v. Secretary of Treasury*, *supra*, 475 U.S. at 860: """"identical words used in different parts of the same act are intended to have the same meaning."""" See also, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995); *Sullivan v. Stroop*, 496 U.S. 478,484 (1990); *United States v. Granderson*, 511 U.S. 39,46 (1994); *United States v. Nippon Paper Industries Co., Ltd.*, 109 F.3d 1,4-5(1st Cir. 1997). This interpretation would also be consistent with the provisions of 42 U.S.C.§14071 addressing registration of residents convicted of federal offenses.

Indeed, construing 18 U.S.C. §4042( c) to encompass state offenses would be redundant, since 42 U.S.C. §14071 already requires each state registration program to include notification to law enforcement when persons convicted of state offenses required to register are, *inter alia*, released from prison. Notification when persons required to register because of federal offenses are to be released would be appropriate; state programs are required to have provisions for accepting such registrants residing within the state.

Accordingly, amicus submits that examining the language of 18 U.S.C. §4042( c) and applying traditional tools of statutory construction, the Congressional limitation of the "sexual offenses" subjecting an inmate to the notification requirements of the statute to the current federal offense of conviction is plain.

The respondents' argument that the BOP's construction of the statute is permissible is predicated on application of *Chevron* deference. However, since Congress has spoken to the question at issue, there is no basis for deference to an administrative determination to the

contrary and the argument should be rejected.[7]  Notification is not required.

**Reliance on the Sex Offender PSF in Rejecting Fox's Request For Halfway House Placement Was Erroneous and the BOP Should be Instructed to Consider the Request, in Good Faith, Without Such Reliance**

Respondents assert that Fox has no right to a halfway house transfer because 18 U.S.C. §3621(b) vests broad placement authority in the BOP and because it is "well-settled" that an inmate has no liberty interest in transfer to half way house (R.M.,p.11-12).  Amicus suggests that broad statements concerning the general limitations on prisoners' constitutional rights, and the general discretionary authority of the BOP to place inmates in facilities deemed appropriate, do not preclude relief here.  The confluence of the obligations imposed on the BOP through the mandatory nature of 18 U.S.C. §3624( c) (addressing pre-release custody) and the incorporation of the flawed inclusion of prior state offenses in 18 U.S.C. §4042( c) in the BOP sex offender PSF classification scheme, which effectively limits eligibility for halfway house placement[8], does create a right to consideration of placement in a halfway house under the normal criteria, without consideration of a sex offender PSF.

Amicus further suggests that imposition of a sex offender PSF on Mr. Fox based on a single 24 year old conviction where there has been no indication of the commission of any other sexual offenses since that 1981 conviction, and the BOP final decision to deny halfway house placement based on his refusal to participate in a SOMP deemed mandatory for inmates so

---

[7] *Montalvo v. Snyder*, 207 F.Supp. 2d 581 (E.D.Ky. 2002), *aff'd*, 84 Fed.Appx. 521 (6th Cir. 2003) (cited by respondents at R.M., p.15) did not address the statutory construction argument raised here; it simply assumed the propriety of the statute, regulation and program statement.

[8] See, P.S. 7310.04 (Community Corrections Center Utilization and Transfer Procedure).

classified, is "arbitrary capricious, an abuse of discretion, or otherwise not in accordance with law" (5 U.S.C. §706(2)(A)) and should be set aside.

**Imposition of the Sex Offender PSF Was Predicated on a Flawed Policy**

As the Court of Appeals explained in *Goldings v. Winn*, 383 F.3d 17, 23 (1st Cir. 2004), 18 U.S.C. §3624( c) "imposes an affirmative obligation on the BOP to take steps to facilitate a smooth re-entry for prisoners into the outside world." While qualified, the obligation cannot be ignored: "...the BOP *must* ensure placement under pre-release conditions except where no such placement is practicable." (emphasis in original). *See also*, *Elwood v. Jeter*, 386 F.3d 842,846 (8th Cir. 2004). In *Goldings*, *supra*, the court vacated the district court's dismissal of an inmate's challenge to the BOP policy limiting eligibility for halfway house placement, holding that the policy was based on an erroneous interpretation of a statute.

In *Knish v. Stine*, 347 F.Supp.2d 682 (D. Minn. 2004), an inmate challenged the December 2002 change in BOP policy limiting halfway house placement to the last 10% of a sentence as based on an erroneous legal opinion of the Attorney General. Relying on the decision in *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004) (which agreed with the analysis in *Goldings*) holding the new BOP policy invalid, the court ordered that the institution "reconsider Petitioner promptly an in good faith for CCC placement consistent with the policy in place prior to December 2002" (347 F.Supp.2d at 688). As the court recognized, petitioner should "...not be subjected to a policy based on an erroneous statutory interpretation,..." (*id.*).

In *Woodall v. Federal Bureau of Prisons*, 2005 WL 3436626 (3rd Cir. 2005) an inmate sought habeas corpus relief challenging the February 2005 BOP regulations limiting placement in

a halfway house to the lesser of ten percent of an inmate's sentence or six months[9]. The court found such relief appropriate as a challenge to the execution of the petitioner's sentence and held the regulations to be unlawful in that they do not allow for consideration of the factors which are required to be considered under 18 U.S.C. §3621(b) in making placement and transfer decisions. In so doing, the court rejected the argument that *Lopez v. Davis*, 531 U.S. 230 (2001) (upholding BOP rule excluding certain categories of inmates from eligibility for discretionary early release program) controlled the analysis of the halfway house rules. Unlike the discretionary program not requiring individualized assessments of eligibility, the halfway house determination involved mandatory consideration of certain factors which required individualized consideration. The court defined the appropriate remedy as an order requiring that the BOP consider, in good faith, whether the petitioner should be transferred to a halfway house without reference to the flawed 2002 and 2005 policies.

Similarly, here, Fox is challenging the policy classifying him as a sex offender as based on an erroneous statutory interpretation. As set forth above, the Classification Program Statement incorporates the Sex Offender Notification Program Statement which includes the overbroad definition of sexual offense set out in 28 C.F.R. 571.72. It is the application of that flawed policy which resulted in the mandate that he participate in the SOMP program and it is his refusal to participate in that program that has driven the BOP denial of his requests for halfway house placement. Accordingly, amicus suggests that, as in the cases discussed above, good faith consideration of his request without the sex offender classification is required.

---

[9] Those regulations were promulgated in response to decisions such as *Goldings* and *Elwood*. See, *Woodall*, *supra* at *3

Respondents' discussion of the scope of authority provided by 18 U.S.C. §3621(b) ignores its requirements for individualized consideration and the impact of the mandatory nature of §3624( c) . The cases cited by respondents concerning the absence of a liberty interest are, amicus suggests, distinguishable from the situation presented in this case. *Dominique v. Weld*, 73 F.3d 1156 (1st Cir. 1996) was an action brought pursuant to 42 U.S.C. §1983 (as was *Sandin v. Connor*, 515 U.S. 472 (1995) upon which it relied) and addressed state programs and policies construed by the court as not mandatory. This Court has construed the claim relating to the denial of transfer to a halfway house as a habeas petition (D.E.19, Memorandum and Order). And as in *Goldings*, *Elwood*, *Woodall* and *Kish* the BOP's reliance on a flawed policy in its decision making requires reconsideration under proper standards.

In *United States v. Laughlin*, 933 F.2d 786 (9th Cir. 1991) defendant, who was assigned to live with a family and placed on electronic monitoring following his release from prison, appealed his subsequent probation violation on the ground that he should not be held accountable for his actions because he had not been placed in a community treatment center before his release(*id.*, at 789). It appears that the release to a family and electronic monitoring was used as a substitute for a halfway house and the court held that that placement was within the options available under §3624( c); that the statute did not "mandate that all prisoners pass through a community treatment center..." (See quotation at R.M., p.12). That does not preclude a finding that under the facts and circumstances here Mr. Fox has a right to consideration of CCC placement under the same standards applied to inmates without a sex offender PSF and without consideration of his refusal to participate in the SOMP.

To the extent that *Prows v. Federal Bureau of Prisons*, 981 F.2d 466 (10th Cir. 1992) and

*Gambino v. Gerlinski*, 96 F.Supp.2d 456 (M.D.Pa. 2000) suggest that an inmate is not entitled to consideration of a halfway house placement under §3624(c ), amicus suggests that they conflict with *Goldings* and other cases cited above  and should be disregarded.

**Imposition of The Sex Offender PSF Was Arbitrary and Capricious and an Abuse of Discretion Under the Facts and Circumstances Here**

Amicus suggests that the denial of Fox's requests for halfway house placement at the BOP national level is agency action under 5 U.S.C. §704 which can be reviewed under 5 U.S.C. §706(2) .  Pursuant to 5 U.S.C. §706(2)(A), a court shall "hold unlawful and set aside" agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Here, Fox was classified as a sex offender and ordered to participate in a Sex Offender Management Program (SOMP) on the basis of a single, 24 year old conviction.  The self-described primary goal of the SOMP is to "help sexual offenders manage their behavior in order to reduce sexual re-offending."  Yet, the BOP mandates participation by all inmates with a sex offender PSF and a low or medium security classification and penalizes those who refuse to participate by deeming them ineligible for halfway house placement without any individualized assessment of the individual's need for the program.[10]

Here, there is no indication that Mr. Fox has committed a sexual offense since his

---

[10]  The BOP treatment of sex offenders may be driven by erroneous assumptions as to the scope of sex offender recidivism.  The Bureau of Justice Statistics of the Department of Justice reported on a study documenting recidivism among 272,111 men and women released from state prisons in 15 states in 1994, including 9,691 male sex offenders.  The study found that sex offenders were less likely than non-sex offenders to be rearrested for any offense.  Of sex offenders released in 1994, 3.5 percent were reconvicted for a new sex crime within the following three years.  The rearrest for sex crime rate of offenders 45 and older was 3.3 percent.  *http://www.ojp.usdoj.gov/bjs/pub/press/rsorp94pr.htm*.

conviction in 1981. By his conduct over the last 24 years, Mr. Fox has demonstrated that his sexual conduct does not require "increased security measures to ensure the protection of society" (P.S. 5100.07, ch.7, p.1)(D.E.7, Ex.E) and that the SOMP is not necessary to manage his behavior. To classify him as a sex offender and to require his participation in an intrusive program which may involve the use of a plethysmograph with no individualized consideration of a showing of need, and to base halfway house determinations on SOMP participation can only be viewed as arbitrary and capricious. As the court discussed in *Woodall*, *supra*, 18 U.S.C. §3621(b) requires that placement decisions be based on individual determinations evaluating, at minimum, the factors set out in that statute – factors which include "the history and characteristics of the prisoner" (18 U.S.C. §3621(b)(3)). And, insofar as the sex offender PSF is based on the erroneous inclusion of past state sexual offenses in those sexual offenses designated under 18 U.S.C. §4042( c)(4)(E), it is not in accordance with law.

    Amicus suggests that the failure to afford individualized consideration of the need for classification as a sex offender and for program participation also requires instructing the BOP to reconsider Mr. Fox's sex offender PSF and to reconsider his placement in a halfway house. Amicus further suggests that the BOP be instructed that the 24 year old conviction is not sufficient to justify a sex offender PSF without some subsequent behavior demonstrating a risk of sexual reoffending.

                                                Respectfully submitted,

                                                /s/ Judith H. Mizner

                                                Judith H. Mizner
                                                Assistant Federal Public Defender

>Federal Defender Office, D. Mass.
>408 Atlantic Ave.
>Boston, MA 02110
>(617) 223-8061

Dated: December 20, 2005

## CERTIFICATE OF SERVICE

    I, Judith H. Mizner, hereby certify that I have, this date, served this Memorandum by mailing a copy thereof to the following: Mr. Charles M. Fox, Reg. No. 02972-088, FMC Devens, P.O. Box 879, Ayer, MA 01432; Mr. David Winn, Warden, FMC Devens, P.O. Box 880, Ayer, MA 01432; Mr. Harley Lappin, Director BOP, 320 N.W. First Street, Washington, D.C. 20534; and by delivering a copy thereof to Gregg Shapiro, Esq., Office of the United States Attorney for the District of Massachusetts, U.S. Moakley Courthouse, 1 Courthouse Way, Boston, MA 02210.

>/s/Judith H. Mizner
>Judith H. Mizner