UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
                                    )
CHARLES FOX,                        )
                                    )
          Petitioner,               )
                                    )
          v.                        )   CIVIL ACTION
                                    )   NO. 05-40106-WGY
HARLEY LAPPIN, Director of the      )
Federal Bureau of Prisons, and     )
DAVID L. WINN, Warden,              )
                                    )
          Respondents.              )
                                    )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    January 17, 2006


I.   **INTRODUCTION**

Petitioner Charles Fox ("Fox"), is challenging the Bureau of
Prisons' ("Bureau") classification of him as a sex offender based
on an over-24-year-old state conviction. See Pet. for a
Declaratory J. under 28 U.S.C. §§ 1331 and 2201 and for a Writ of
Mandamus and Prelim. Inj. ("Fox Pet.") [Doc. No. 1]. Fox argues
that, because of this improper classification, he was denied
transfer to a halfway house and, upon his release, will be
subject to notification and registration requirements pursuant to

Title 18, Section 4042(c) of the U.S. Code ("Section 4042(c)").[1]
Id. at 3, 4.

Fox initially sought a declaratory judgement, preliminary
injunction, and writ of mandamus for his claims.  In a recent
opinion, this Court denied respondents' motion to dismiss, ruling
that the notification claim was properly before the Court and
construing the denial of transfer claim as a petition for habeas
relief.  Mem. and Order of Nov. 18, 2005 [Doc. No. 19] at 11.
The Court also denied the request for a writ of mandamus and
reserved its judgement as to the issuance of a preliminary
injunction.  Id.  Fox has exhausted all of his administrative
remedies.  Resp'ts' Status Report [Doc. No. 17] at 1.


    A.    Factual Background

    Fox is currently a prisoner at the Federal Medical Center in
Devens, Massachusetts ("FMC Devens") serving a 37-month prison
term for being a felon in possession of a firearm in violation of
Title 18, Section 922(g)(1) of the U.S. Code.  See Decl. of Diana
Jacobs Lee, Assistant Regional Counsel, Northeast Regional Office

---

[1]  Because this is one of a number of cases in this Court
raising similiar claims, see Cooper v. Winn, No. 05-40164 (D.
Mass. filed Sept. 16, 2000) (Lindsay, J.); Barrera v. Winn, No.
05-40107 (D. Mass. filed June 23, 2005) (Zobel, J.); Johnson v.
Winn, No. CA 05-40197 (D. Mass. filed Oct. 28, 2005) (Gorton,
J.), the Court sought and received a brief amicus curiae from the
Federal Defenders Office and expresses its appreciation for that
submission.

of the Federal Bureau of Prisons ("Lee Decl.") [Doc. No. 7.], Ex. A ("Judgment of April 23, 2003").  His projected release date is February 1, 2006.  Lee Decl., Ex. B ("Inmate Data").

At some point prior to or during his term of confinement, the Bureau applied to Fox a Public Safety Factor ("Safety Factor") of "Sex Offender" based on a 1981 West Virginia conviction for second degree sexual assault.  See Resp'ts' Resp. to Pet'r's Pet. for a Declaratory J. and For a Writ of Mandamus and Prelim. Inj. ("Resp'ts' Resp.") [Doc. No. 6] at 3-4; Lee Decl., Ex. D ("Security/Designation Data Form").  According to his Pre-sentence Report, in 1981, Fox was sentenced to a term of 5-10 years in the Greenbrier County Circuit Court in Lewisburg, West Virginia for sexual assault in the second degree.  Lee Decl. ¶ 5.  He began serving that sentence on July 25, 1984, and was released from custody on July 25, 1989.  Id.  The Bureau indicated that it had no information on the prior conviction other than that Fox's original charge was "unlawfully, feloniously, and forcibly engaging in sexual intercourse." Security/Designation Data Form.

### 1.    "Sex Offender" Public Safety Factor

An inmate's placement at a particular prison is determined by assessing the security (minimum, low, medium, high)[2] and program needs (i.e., substance abuse, mental health, vocational/educational training) of that inmate, as well as any other administrative factors (i.e., overcrowding, judicial recommendations, separation needs).  Program Statement 5100.07, ch. 1, at 1.  Safety Factors are used by the Bureau to determine an inmate's security designation, which then helps determine his placement at a particular prison.  Id. ch. 1, at 2 & ch. 7, at 1.

Two of the six "elements" that require the application of the "Sex Offender" Safety Factor to an inmate are: engaging in sexual contact with another person without permission (forcible rape, sexual assault, or sexual battery); and any offense referenced in the Sex Offender Notification and Registration Program Statement. Id. ch. 7, at 2.

Fox's judgement order in this case, in addition to recommending placement in a substance abuse treatment, also contained a judicial recommendation that "Defendant be incarcerated as close to his home as possible in a camp-type,

---

[2]    The Bureau's prisons are grouped into security levels -- minimum, low, medium, high, and an administrative category. Federal Bureau of Prisons, Program Statement 5100.07, Security Designation and Custody Classification Manual, ch. 1, at 1 (Sept. 3, 1999)("Program Statement 5100.07").

minimum security facility if deemed appropriate by the Bureau of Prison." Lee Decl., Ex. A. (J. in <u>United States</u> v. <u>Fox</u>, No. 5:02-00255-01 (Apr. 23, 2003)).  The Bureau designated him to a Low Security prison instead -- one can conclude, due to his "Sex Offender" Safety Factor.  <u>See</u> Security/Designation Form.

### 2.    Sex Offender Management Program at FMC Devens

FMC Devens assigns all inmates with a Safety Factor of "Sex Offender" and a "low" or "medium" security designation[3] to participate in the Sex Offender Management Program ("Sex Offender Program").  Sex Offender Management Program Inmate Handbook ("Handbook") at 1.  This program was established on March 1, 2004 and its primary goal is to "help sexual offenders manage their behavior in order to reduce sexual re-offending."  <u>Id.</u>; Decl. of Cheryl Renard - Coordinator of the Sex Offender Program ("Renard Decl.") [Doc. No. 14], ¶ 2.  There are currently 440 inmates enrolled in the program.[4]  Renard Decl. ¶ 2.  A psychological

_____

[3]  Fox was given a "low" security designation.  <u>See</u> Security/Designation Data Form.

[4]  Based on Dr. Renard's declaration, the Court rejects Fox's contention that this program is not up and running.  <u>See</u> Pl. Reply to and Objections to Resp'ts' Resp. ("Pet. Reply") [Doc. No. 11] at 3-4.  Fox's sole basis for this assertion is a letter dated August 18, 2005, from an attorney informing her client in prison that Dr. Renard told that attorney that "the Sex Offender Program at Devens was not up and running."  Pet. Reply, Ex. A ("Letter from Kimberly Schechter, Assistant Federal Defender, Western District of New York to Mr. Kenneth J. Happy").  Even if the Court considers this double hearsay evidence, it

evaluation and risk assessment is completed for all participants. Id.; Handbook at 2. The program staff then use the evaluation results to make management and treatment recommendations for each participant.[5] Renard Decl. ¶ 2. The Program's staff and each participant's Unit Team "collaborate to develop a sound release plan for the program participant that includes appropriate post-release housing, possible placement in Community Corrections Centers (CCC), as well as recommendations for employment, community-based treatment and community supervision." Handbook at 3. Some aspects of the program are voluntary -- psychological testing, psycho-education classes, non-residential therapy. Id. at 4. Active participation, however, is considered by the Unit Team in recommending Community Corrections Center ("Community Center") placement for the inmate; "poor cooperation or failure to participate may curtail [] placement." Id.

_____

credits the word of Dr. Renard that the program has been in continuous operation since it began and that, in her conversation with Ms. Schechter, she was referring to intensive sex offender therapy as not being available at FMC Devens. Renard Decl. ¶¶ 2-3.

[5] A Correctional Management Plan is completed for each inmate in the program. Handbook at 2. The plan formally informs each participant of the program's components as well as makes treatment and program recommendations. Id. at 2-3. Inmates may be encouraged to participate in the following sex offender psychology programs: The Sex Offender Education Program, Non-residential Sex Offender Treatment, or Psychiatric treatment. Id. at 3.

On May 19, 2005, Fox's Unit Team recommended that he be
"denied future consideration for [Community Center] placement"
and remain at FMC Devens until his Good Conduct Time Release date
of February 1, 2006.  Lee Decl., Ex. G. ("Mem. For David L. Winn,
Warden") ("Winn Mem.").  The memo cited "Poor Institutional
Adjustment" as the reason for the recommendation and discussed
Fox's failure to participate in the Sex Offender Program, noting
that Fox has "displayed poor cooperation by refusing to be
interviewed or complete any testing with [program] [s]taff."[6]
Id.  Shortly after that, Fox filed a request for administrative
relief as to this decision.  See Lee Decl., Ex. H.  On June 13,
2005, Fox filed a second request for administrative relief asking
that his "Sex Offender" classification be changed.  See Lee
Decl., Ex. K.  On June 23, 2005, Fox filed a third request asking
that the finding of "Poor Institutional Adjustment" be removed
from his record.  See Lee Decl., Ex. O.  All three requests were
denied and subsequently rejected on appeal.  See Lee Decl., Ex.
I, Ex. L, Ex. N & Ex. P; Resp'ts' Status Report at 1.  On June
23, 2005, shortly after Fox began the process of administrative
review, Fox filed this petition.  See Fox Pet.

---

[6]  On July 8, 2004, Fox also refused to sign an
acknowledgment that he had reviewed the Handbook and was given an
opportunity to ask questions about the program.  Handbook at 7
(containing signature of program staff member and the notation
"inmate refused to sign - S.B.").

## II.   DISCUSSION

### A.   Notification and Registration Requirement

Section 4042(c) requires notice of an inmate's release to be provided to state and local authorities where that person was convicted of any of the following offenses: A) kidnapping involving a minor victim, 18 U.S.C. § 1201; B) sexual abuse in a federal prison or special maritime or territorial jurisdiction of the United States, 18 U.S.C. §§ 2241 et seq. C) sexual exploitation and other abuse of minors involving interstate/foreign commerce or transport, 18 U.S.C. §§ 2251 et seq.; D) transportation of an individual for illegal sexual activity in interstate/foreign commerce or within territories of the United States, 18 U.S.C. §§ 2421 et seq. and E) "<u>any other offense designated by the Attorney General as a sexual offense for purposes of this subsection</u>," 18 U.S.C. § 4042(c) (emphasis added).

The Attorney General delegated that authority to the Director of the Bureau of Prisons.  28 C.F.R. § 571.71.  The Director then listed those designated offenses as including "[a]ny offense under the law of any jurisdiction that involved: 1) Engaging in sexual contact with another person without obtaining permission to do so (forcible rape, sexual assault or

sexual battery) . . . ."[7]  28 C.F.R. § 571.72.  The Bureau's
Program Statement implementing this provision, entitled "Sex
Offender Notification and Registration", includes this list.
Federal Bureau of Prisons, Program Statement 5141.02, Sex
Offender Notification and Registration at 4-6 (Dec. 14, 1998).

In addition to a notification requirement, the statute
requires the designated sex offender to register in the state in
which he will reside.  The statute provides:

> Notice provided under paragraph (1) shall include . . .
> the place where the person will reside, and the
> information that the person <u>shall</u> be subject to a
> registration requirement as a sex offender . . . .
>
> The Director of the [Bureau] shall inform a person
> described in paragraph (4) who is released from prison
> that the person shall be subject to a registration
> requirement as a sex offender in any State in which the
> person resides, is employed, carries on a vocation, or
> is a student . . . .

18 U.S.C. 4042(c)(2)-(3) (emphasis added).


### 1.    Standard of Review

It is undisputed that Congress granted the Attorney General
the authority to promulgate regulations designating sex offenses
for purposes of the federal sex offender statute.  <u>See</u> 18 U.S.C.
§ 4042.  "When there is no challenge to whether Congress
authorized the Attorney General to issue regulations, we are

---

[7]  This provision was enacted pursuant to "notice and
comment rulemaking" procedures and, therefore, constitutes a
legislative rule.  <u>See</u> 63 Fed. Reg. 69386 (Dec. 16, 1998).

faced with only two questions." Succar v. Ashcroft, 394 F.3d 8, 22 (1st Cir. 2005).

The Court must first determine whether Congress has spoken to the precise question at issue. Id. "If the language of the statute is plain and admits of no more than one meaning or if the statute's legislative history reveals an unequivocal answer as to the statute's meaning, we do not look to the interpretation that may be given to the statute by the agency charged with its enforcement." Goldings v. Winn, 383 F.3d 17, 21 (1st Cir. 2004) (internal quotations and citations omitted). If Congress has not spoken as to that issue, the next step is for the Court to determine whether "the agency's answer is based on a permissible construction of the statute." Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-43 (1984). "[W]henever Congress has left a gap for the agency to fill, then we reach the second question, for the agency's regulation is 'given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute.'" Succar, 394 F.3d at 23 (citing Chevron, 467 U.S. at 843-44)(alteration in original).

**2.  The Attorney General's Authority Under The Statute Is Limited To Designating Federal Offenses as Sex Offenses**

Congress's express delegation of authority to the Attorney General was to designate sex offenses for purposes of the

<u>statute</u>.  The legislative history of the statute reveals that Congress's purpose was to supplement the states' own sex offender registries with persons convicted of federal sex offenses.

What is now Section 4042(c) was originally enacted as part of an extensive piece of legislation seeking to clarify the standards for state sex offender registration programs.  <u>See</u> H.R. Rep. No. 105-256, at 1 (1997).  The section containing this language was entitled "Federal Offenders and Military Personnel."[8]  H.R. 1683, § 2(h), <u>as found in</u> 143 Cong. Rec. H7626, H7627 (1997); Pub. L. No. 105-119 § 115(a)(8), 111 Stat. 2440 (1997).  In discussing the purpose of this legislation, a House Report submitted by the Committee on the Judiciary observes:

> Importantly, H.R. 1683 applies registration requirements to certain offenders who currently are not required to register under the Wetterling Act.  The bill requires <u>offenders convicted in federal or military court of certain sex offenses</u> to register in the State in which they reside.  In addition, registration will become a condition of probation or parole for such offenders.  The bill is not intended to establish a federal registry system, nor does it require States to enact new laws.  It does require <u>offenders convicted in military and federal court</u> to register into already established State programs.

H.R. Rep. No. 105-256, at 7 (emphasis added).

------

[8]  This bill passed the House on September 23, 1997.  <u>See</u> H.R. Rep. 105-845, at 69 (1999).  The text of the bill was later incorporated into an appropriations act and passed November 26, 1997.  <u>See</u> Pub. L. No. 105-119; H.R. Rep. No. 105-845, at 69-70.

In a section-by-section analysis of the bill, a discussion of this notification provision (section 2(h)) stated that: "Subsection (h) adds a new subsection to 18 U.S.C. 4042 which requires the Bureau of Prisons to give notice to State and local law enforcement and sex offender registration agencies concerning the release to their areas of federal sex offenders." Id. at 19. This section also notes that the "procedures and requirements under the new subsection are largely modeled on existing provisions in 18 U.S.C. 4042(b), which generally require notice to State and local law enforcement concerning the release and subsequent movements of federal offenders and drug offenders." Id. The Congressional Record also reflects this understanding of the bill:

> This bill will require offenders convicted under
> Federal or military law of certain sex offenses to
> register in the State in which they reside . . . .
> [The bill] does require Federal offenders to register
> under already existing State programs. Convicted sex
> offenders in the Federal system may be just as
> dangerous as offenders in all of our States. We must
> keep track and notify communities of their whereabouts.

143 Cong. Rec. H7628-H7629 (statement of Rep. McCollum).

> H.R. 1683 builds on the foundation of the 1994 Jacob
> Wetterling Act, and applies the Wetterling requirements
> to offenders convicted under Federal and military law.

Id. at H7631 (statement of Rep. Ramstad).

A subsequent House Report summarizing the various laws enacted by the 105th Congress confirms that Congress's intent in passing the bill was to "require federal and military offenders

12

to participate in the [state sex offender registry] program."[9] H.R. Rep. No. 105-845, at 69.

This provision was intended to supplement the states' registries with information on federal sex offenders. The effect of the Bureau's construction is to supercede the laws and regulations of the states concerning the registration of state sex offenders. See Program Statement 5141.02, Attachment A, pg. 1, Sex Offender Release Notification ("Pursuant to 18 U.S.C. § 4042(c), the [Bureau] is notifying your office of the release of an offender who, based upon available information, was convicted of a sexual offense. This individual is subject to registration as a sex offender under federal law."). This creates the anomalous situation of a federal prisoner with a state sex offense conviction being required to register upon release in a state whose sex offender registration laws would not require registration of that person. For example, if released in Massachusetts, Fox may not be required to register as a sex offender because of Massachusetts' narrow definition of a sex offender. See Mass. Gen. Laws ch. 6, § 178C (defining "sex offender", in part, as "a person who resides, works or attends an institution of higher learning in the commonwealth and who has

---

[9] The report also notes that "while no hearings were held on the bill, formal and informal input was received from the Department of Justice and from several State and local government officials, law enforcement officers and criminal history repository directors." H.R. Rep. 105-845, at 69.

been convicted of a sex offense . . . .").  If released in West
Virginia, where Fox was convicted, under state law he likewise
may not be required to register, given the state's duration
requirements.[10]  See W. Va. Code § 15-12-2 (defining "sex
offender" broadly); W. Va. Code § 15-12-4 (requiring a sex
offender to register, except for periods of incarceration, until
ten years have elapsed since the person was released from prison
or since the person was placed on probation, parole, or
supervised release).  State laws governing what state sex
offenders are required to register and for how long are
effectively nullified by the Bureau's interpretation of this
provision as they relate to federal prisoners with state
convictions.

Given the legislative history, the Bureau has exceeded the
scope of the authority delegated by Congress.[11]  A federal
prisoner cannot be designated as a sex offender under Section
4042(c) based on a state sex offense.  The Bureau argues that

---

[10]    Fox was released from his prison term on the sex offense
conviction in 1989.  See Lee Decl. ¶ 5.

[11]    In Simmons v. Nash, the New Jersey District Court also
ruled that the Bureau exceeded its authority under Section
4042(c) in designating federal inmates as sex offenders based on
prior state convictions.  361 F. Supp. 2d 452, 455 (D.N.J. 2005).
The Simmons Court held that, based on the language of the
provision and the similarities between Sections 4042(c) and
4042(b), Section 4042(c) "clearly provides that only the current
federal offense can act as a trigger for the notification
requirement."  Id. at 456-57.

14

this interpretation would render Section 4042(c)(4)(E), allowing the designation of additional offenses, "practically meaningless." Resp'ts' Resp. at 14. This argument is not persuasive since the Bureau did, in fact, designate a number of other non-state crimes as sex offenses in accordance with that provision. See 28 C.F.R. § 571.72 (designating offenses under the Uniform Code of Military Justice and the District of Columbia code as sex offenses for purposes of the statute); Statement 5141.02 at 4-6 (same). As the Amicus suggests, there are also other federal offenses that could be designated as sex crimes, including federal sex offenses enacted in the future. Mem. of Amicus Curiae Addressing Resp'ts' Substantive Argument ("Amicus Mem.") at 9-10 (suggesting that offenses under Title 21 -- offenses dealing with date rape drugs -- and Title 18 -- offenses ranging from assault to peonage and slavery -- could be designated as sexual offenses by the Bureau).

The Bureau argues that, regardless of the Court's decision as to the statutory directive, the Bureau should not be prevented from notifying state and local authorities of Fox's release. Notification of release of a sex offender by the Bureau pursuant to Section 4042(c), however, imposes registration obligations both on the person released and the state notified. The Bureau is certainly free to notify the state as to a released inmate's prior sex offenses. The Bureau, however, can in no way require

15

the inmate to register as a sex offender with that state.
Likewise, a basic tenet of our federal system of government is
that it is up to a particular state to make determinations such
as whether or not a federal inmate ought be registered in its sex
offender system.

###    B.    Denial Of Transfer Claim

Fox also challenges the Bureau's refusal to consider him for
Community Center placement based on his failure to participate in
a mandatory program for inmates with a "Sex Offender" Public
Safety Factor.[12]    In reviewing this claim, construed as a
habeas petition, Fox's entitlement to relief depends on him
showing that he is "in custody in violation of the Constitution
or laws or treaties of the United States."  28 U.S.C. §
2241(c)(3).  Fox raises a claim under the Due Process Clause by
asserting an infringement of a liberty interest.  See Pet. Mem.
at 7 ("Petitioner contends that a liberty interest exists in this
case because had Petitioner been granted a six or five month

---

[12]    Fox incorrectly relies on Simmons v. Nash, 361 F. Supp.
2d 452 (D.N.J. 2005), for the proposition that the Bureau does
not have the authority to apply a "Sex Offender" Safety Factor to
him based on a prior state court conviction.  See Pet. Mem. at 2-
3. The Simmons ruling, as the Bureau correctly points out, only
relates to the determination of whether an inmate is a sex
offender for purposes of the post-incarceration notification
requirement set forth in Section 4042(c) and does not discuss the
Bureau's authority to classify inmates using Public Safety
Factors.  See Simmons, 361 F. Supp. 2d at 453-54; Resp'ts' Resp.
at 11 n.2.

halfway house, he would be closer to his home and better able to readjust to society."). He also claims statutory violations in his exclusion from Community Center placement which, he argues, is the result of his "Sex Offender" Safety Factor. Pet. Mem. at 3. He is seeking the removal of this Public Safety Factor and reconsideration for Community Center placement. Id.

### 1. Fox's Due Process Claim Must Be Denied

A protected liberty interest may arise from the Due Process Clause or from a state or federal law. Fristoe v. Thompson, 144 F.3d 627, 630 (10th Cir. 1998). The Due Process clause does not itself afford Fox a liberty interest in transfer to a less restrictive environment before the expiration of his sentence. Badea v. Cox, No. 93-55475, 1994 U.S. App. LEXIS 14868, at *7 (9th Cir. June 7, 1994); See Prows v. Federal Bureau of Prisons, 981 F.2d 466, 468-9 n.3 (10th Cir. 1992) (observing that "federal prisoners generally enjoy no constitutional right to placement in any particular penal institution"); Lynch v. Hubbard, 47 F. Supp. 2d 125, 127 (D. Mass. 1999) (O'Toole J.) (citing Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence.")).

The statute governing pre-release custody also fails to create a liberty interest in the transfer to a less restrictive environment.  The statute provides:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.  The authority provided by this subsection may be used to place a prisoner in home confinement.

18 U.S.C. § 3624(c).

This statute imposes a qualified obligation on the Bureau to take steps to facilitate a smooth re-entry for prisoners into the community.  Goldings v. Winn, 383 F.3d 17, 23 (1st Cir. 2004).  This section does not mandate Community Center placement; however, the Bureau must ensure placement under pre-release conditions except where no such placement is practicable.[13]  Id. Because neither Community Center placement nor any placement in a less restrictive environment is mandated, the statute cannot create a liberty interest in the denial of such placement.

---

[13]  The First Circuit further noted:

> The provision thus reflects Congress's intent to impose upon the agency a duty to prepare prisoners for reentry into the community, without tying the hands of administrators in deciding where prisoners are to be placed.  The [Bureau] is not free to disregard this duty.  If it did so, judicial relief might be available.

Goldings, 383 F.3d at 23-24 (citation omitted).

Gambino v. Gerlinski, 96 F. Supp. 2d 456, 459 (M.D. Pa. 2000),
aff'd, 216 F.3d 1075 (3d Cir. 2000) (unpublished table opinion)
(holding that section 3624(c) does not create a liberty interest
because it refers to no mandatory procedures and does not provide
"'specified substantive predicates' which dictate a substantive
result"); Badea, 1994 U.S. App. LEXIS 14868, at *7 (ruling that
section 3624(c) created no liberty interest in transfer to a
community treatment center because the statute used discretionary
terms and did not direct that any action be taken or avoided);
see Prows, 981 F.2d at 468 (holding that section 3624(c) does not
confer on prisoners an enforceable right to any particular form
of pre-release custody); United States v. Laughlin, 933 F.2d 786,
789 (9th Cir. 1991) ("Nothing in the language of section 3624(c)
mandates that all prisoners pass through a community treatment
center in route to free society.").

     The Amicus argues that "[t]he confluence of the obligations
imposed on the [Bureau] through the mandatory nature of 18 U.S.C.
§3624(c) (addressing pre-release custody) and the incorporation
of the flawed inclusion of prior state offenses in 18 U.S.C.
§4042(c) in the [Bureau's] sex offender PSF classification
scheme, which effectively limits eligibility for halfway house
placemen[t], does create a right to consideration of placement in
a halfway house under the normal criteria, without consideration
of a sex offender PSF."  Amicus Mem. at 12.  To the extent that

19

the Amicus argues that this creates a liberty interest, this argument must also be rejected.  Fox's claim is not that he was denied any pre-release treatment, the qualified obligation imposed on the Bureau by the statute.  See Goldings, 383 F.3d at 23.  He contests only his denial of placement in a halfway house -- something that is not mandated by the statute.  Even assuming that Fox was improperly classified, without a concrete liberty interest he cannot assert a due process claim.  See Green v. Bureau of Prisons, No. 00-819, 2002 U.S. Dist. LEXIS 24917, at *7-10 (D. Minn. Jan. 29, 2002) (ruling that no liberty interest is implicated where a statute -- Title 18, Section 3621(e) of the U.S. Code -- makes an inmate who completes a substance abuse program eligible for early release and petitioner cannot be considered for the program because he has a "Sex Offender" Safety Factor).[14]

## C.   Fox's Claims of Statutory Violations

The Court must here determine whether the Bureau exceeded its authority in construing and effectuating the relevant

---

[14] Classification as a sex offender and the resultant stigma, without more, does not implicate a protected liberty interest upon which a due process claim could be based.  Wilks v. Mundt, No. 01-2999, 2002 U.S. App. LEXIS 1309, at *2 (8th Cir. Jan. 22, 2002); Day v. Nash, No. 05-797, 2005 U.S. Dist. LEXIS 24539, at *4-6 (D.N.J. Oct. 12, 2005) (holding that allegation of improper assignment of "Sex Offender" Safety Factor did not implicate a liberty interest).

statutes.   The Court can also hold unlawful any action by an
agency it finds to be arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with the law.   5
U.S.C. § 706(2)(A).   Judicial review of individual determinations
under those statutes governing inmate placement, transfer,
release and early release -- Title 18, Sections 3621-3624 of the
U.S. Code -- however, is precluded under section 706 of the APA.
18 U.S.C. § 3625 (stating that sections 554-55 and 701-706 of the
Administrative Procedure Act do not apply to the making of any
determination, decision, or order under sections 3621-3624);
Iacaboni v. United States, 251 F. Supp. 2d 1015, 1036 (D. Mass.
2003) (Ponsor, J.).   The Bureau's decision not to recommend Fox's
transfer to a Community Center falls under sections 3621 and
3624.   The Court, therefore, can only review the Bureau's
policies regarding the placement of inmates with "Sex Offender"
Safety Factors to determine if they are contrary to the Bureau's
statutory authority under sections 3621 and 3624, not the
decision itself.   Iacaboni, 251 F. Supp. 2d at 1036 (ruling that
Bureau rulemaking activities and erroneous interpretations of
statutory authority in the form of formal regulations and
informal program statements are reviewable).   In addition, the
Court will also consider whether the Bureau adhered to the
procedural prerequisites -- "notice and comment" rulemaking
requirements -- in adopting any legislative rule.   5 U.S.C. §

21

553; see Monahan v. Winn, 276 F. Supp. 2d 196, 212-13 (D. Mass. 2003) (Gertner, J.).

Review of an individual Bureau classification decision, however, is nonetheless available pursuant to section 706 since the classification procedures were established pursuant to section 4081, albeit for purposes of inmate placement.  The Court can, therefore, review the Bureau's decision to assign Fox a "Sex Offender" Safety Factor under section 706.


### 1.    Fox's Classification As A Sex Offender Was Not An Abuse Of Discretion

The Bureau has the authority to establish a system of classification of prisoners "according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of [prisoners]."  18 U.S.C. § 4081.  Classification of a prisoner is required under 28 C.F.R. § 524.10 et. seq, Classification and Program Review of Inmates.[15]  The Bureau issued the "Security Designation and Custody Classification

---

[15]    This rule was enacted in accordance with proper "notice and comment" rulemaking procedures.  See Control, Custody, Care, Treatment and Instruction of Inmates; Classification and Program Review of Inmates, 56 Fed. Reg. 30676 (July 3, 1991); Control, Custody, Care, Treatment and Instruction of Inmates; Classification and Program Review of Inmates, 56 Fed. Reg. 5302 (Feb. 8, 1991).

Manual" -- Program Statement 5100.07[16] -- to effectuate the
classification directives.  <u>See generally</u> Program Statement
5100.07.

Given the broad discretion conferred by Congress to the
Attorney General as delegated to the Bureau Director under
section 4081, <u>see</u> 18 U.S.C. § 4081; 28 C.F.R. § 0.96, the
Bureau's assignment of a "Sex Offender" Safety Factor to
prisoners with prior state sex offenses cannot be found contrary
to the statute or congressional intent.  Classification of
inmates is a matter within the discretion of prison officials.
<u>McCord</u> v. <u>Maggio</u>, 910 F.2d 1248, 1250 (5th Cir. 1990) ("The
Supreme Court has established a 'minimum intrusion' policy into
the decisions of state prison administration that provides these
official with wide discretion in the operation of prison
facilities.") (citing <u>Procunier</u> v. <u>Martinez</u>, 416 U.S. 396
(1974)); <u>Schepis</u> v. <u>Maldonado</u>, No. 0:04-0276-17BD, 2004 U.S.
Dist. LEXIS 27453, at *7 (D.S.C. Oct. 20, 2004); <u>see</u> <u>Sweet</u> v.
<u>South Carolina Dep't of Corrections</u>, 529 F.2d 854, 859 (4th Cir.
1975) (en banc) (describing federal courts' deference to prison
administrators and all administrative matters unless the

---

[16]  Program Statement 5100.07 can be best classified as a
general statement of policy -- "statements issued by an agency to
advise the public prospectively of the manner in which the agency
proposes to exercise a discretionary power."  <u>Monahan</u>, 276 F.
Supp. 2d at 213.  It therefore would not be subject to the
"notice and comment" rulemaking requirements.

conditions rise to the level of a constitutional violation);
<u>Monahan</u>, 276 F. Supp. 2d at 196.

Fox can challenge his individual classification as a sex
offender if he can show that the Bureau's decision was
"arbitrary, capricious, an abuse of discretion or otherwise not
in accordance with the law."  5 U.S.C. § 706(2)(a); <u>see</u> <u>Murphy</u> v.
<u>Derosa</u>, No. 03-5887, 2005 U.S. Dist. LEXIS 23413, at *24 (D.N.J.
Oct. 3, 2005) (slip op.).  <u>Gabriel</u> v. <u>Fleming</u>, No. 4:03-CV-0937-
Y, 2003 U.S. Dist. LEXIS 24373, at *4 (N.D. Tex. Dec. 31, 2003)
("[A]bsent an abuse of discretion . . . a federal court will not
interfere with administrative determinations regarding custodial
classification of an inmate.").  Fox can make no such showing.

The Amicus argues that because the "Sex Offender" Public
Safety Factor classification incorporates the Sex Offender
Notification Program Statement with its overly-inclusive
definition of "sexual offenses", consideration of Fox's request
for Community Center placement without the "Sex Offender"
classification is warranted.  Amicus Mem. at 14.  The inclusion
of those factors identified by the Sex Offender Notification
Program statement is not improper for purposes of inmate
classification.  Though consideration of prior state offenses is
contrary to congressional intent in enacting Section 4042(c), it
is not contrary to Title 18, Section 4081 of the U.S. Code.
Unlike section 4042(c), section 4081 does not suggest that the

24

Bureau is limited in determining custody classifications or
Public Safety Factors to consideration of prior federal crimes
only.  See also Nash, 2005 U.S. Dist. LEXIS 24539, at *7
(finding no abuse of discretion because the governing statutes,
regulations, and program statement did not suggest that the
Bureau was limited to consider only criminal conduct of
particular recency).  There are also multiple elements for which
an inmate can be classified as a sex offender -- any offense
referenced in the Sex Offender program statement; engaging in
sexual contact with another person without obtaining permission
to do so.  Fox could be classifed as a sex offender based on
either provision.  Fox was classified based on a finding by the
Bureau that, according to his record, he had a prior conviction
for a sex offense.  Fox does not challenge the accuracy of this
finding.  Since it is permissible for the Bureau to include prior
state convictions in classifying inmates, it cannot be considered
an abuse of discretion, arbitrary, or capricious for Fox to be
assigned a "Sex Offender" Safety Factor.


> **2.    Exclusion Of Inmates With "Sex Offender" Safety
>         Factor From Community Center Placement Is
>         Permissible**

The central issue is whether the Bureau violates either
section 3621 or section 3624 by categorically excluding inmates
with "Sex Offender" Safety Factors from Community Center

placement.  The Bureau has statutory authority to determine an

inmate's initial placement, considering the history and

characteristics of the prisoner" and, "at any time, having regard

for the same matters [i.e., the history and characteristics of an

inmate], "direct the transfer of a prisoner from one penal or

correctional facility to another."[17]  18 U.S.C. § 3621(b).  Day,

---

[17] The statute provides:

The Bureau of Prisons shall designate the place of the
prisoner's imprisonment.  The Bureau may designate any
available penal or correctional facility that meets
minimum standards of health and habitability
established by the Bureau, whether maintained by the
Federal Government or otherwise and whether within or
without the judicial district in which the person was
convicted, that the Bureau determines to be appropriate
and suitable, considering--
(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the
sentence--
(A) concerning the purposes for which the sentence to
imprisonment was determined to be warranted; or
(B) recommending a type of penal or correctional
facility as appropriate; and
(5) any pertinent policy statement issued by the
Sentencing Commission pursuant to section 994(a)(2) of
title 28.

In designating the place of imprisonment or making
transfers under this subsection, there shall be no
favoritism given to prisoners of high social or
economic status.  The Bureau may at any time, having
regard for the same matters, direct the transfer of a
prisoner from one penal or correctional facility to
another.  The Bureau shall make available appropriate
substance abuse treatment for each prisoner the Bureau
determines has a treatable condition of substance
addiction or abuse.

26

2005 U.S. Dist. LEXIS 24539, at *3.  The broad discretion granted by Congress under this statute[18], see Goldings, 383 F.3d at 22, 28, is qualified only by an obligation under section 3624 to ensure the placement of a prisoner under pre-release conditions -- except where no such placement is practicable, 18 U.S.C. 3624; Goldings, 383 F.3d at 23.[19]  As noted previously, section 3624 does not mandate Community Center placement.

The Bureau's policies generally prevent inmates with a "Sex Offender" Safety Factor from being placed with or transferred to a Community Center.  The Bureau's policy statement on Community Center placement states that Inmates who are assigned a "Sex Offender" Safety Factor "shall not ordinarily participate in CCC referrals."  Federal Bureau of Prisons, Program Statement

---

18 U.S.C. 3621(b).

[18]  See Yana Dobkin, Note, Cabining the Discretion of the Federal Bureau of Prisons and the Federal Courts: Interpretive Rules, Statutory Interpretation, and the Debate Over Community Confinement Centers, 91 Cornell L. Rev. 171, 199-206 (2005) (discussing the broad discretion granted the Bureau under section 3621 and the Department of Justice's inability to limit that discretion).

[19]  In Goldings, the First Circuit reconciled section 3624 with the discretion afforded the Bureau in section 3621(b), ruling that the Bureau was not bound by the time restrictions of section 3624(c) regarding Community Center placement, and that section 3621(b) authorized the Bureau to transfer an inmate to Community Center placement at any time.  383 F.3d at 25-26 (finding that the Bureau had discretion under section 3621(b) to transfer Goldings to a Community Center because a Community Center qualifies as a "place of imprisonment" for purposes of the statute).

7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure at 10 (Dec. 16, 1998) ("Program Statement 7310.04").  In addition, the guidelines for inmate placement require that an inmate with a "Sex Offender" Safety Factor cannot obtain a security designation less than "low", preventing placement at a Community Center, where a "Community" security designation is required.  See Statement 5100.07, ch. 2, at 1 (defining the "Community" designation as allowing participation in community-based programs).  Transfer decisions are also made in accordance with these guidelines.  Id. ch. 1, at 2.

Since Congress has not spoken to the precise issue, the question is whether the Bureau has "filled the statutory gap in a way that is reasonable in light of the legislature's revealed design."  See Lopez v. Davis, 531 U.S. 230, 242 (2001).  The Court holds that the Bureau's interpretation, in light of the broad discretion afforded by Congress in determining inmate placement, is reasonable in making categorical exclusions.  See id.  "[E]ven if a statutory scheme requires individualized determinations . . . the decisionmaker has the authority to rely on rulemaking to resolve a clearly certain issue of general applicability unless Congress clearly expresses an intent to withhold that authority . . . .  [C]ase-by-case decisionmaking in thousands of cases each year could invite favoritism, disunity

and inconsistency." Id. at 243-44 (internal quotations and citations omitted, first alteration in original).

Both the classification guidelines and the Bureau policy against Community Center placement for inmates with "Sex Offender" Safety Factors constitute interpretive rules for purposes of judicial review. Interpretive rules -- rules that provide guidance for agency decisionmaking in specific situations but do not create rights, assign duties, or impose obligations -- are typically subject to much more expansive review in the courts than a legislative rule. Monahan, 276 F. Supp. 2d at 214. Interpretive rules, however, are exempt from the "notice and comment" rulemaking procedures of the Administrative Procedure Act. Warder v. Shalala, 149 F.3d 73, 79 (1st Cir. 1998) (citing 5 U.S.C. § 553(b)(3)(B)).

Although an interpretive rule, the classification guidelines' placement restrictions may be entitled to Chevron deference in light of the interstitial nature of the issue of inmate placement, the expertise of the Bureau, the complexity of administration of the statute, and the careful consideration the Bureau has given in developing the guidelines. Barnhart v. Walton, 535 U.S. 212, 221-222 (2002) (holding that an agency interpretation established through less formal means than "notice and comment rulemaking" may still be afforded judicial deference); see Program Statement 5100.07, at 3-4 (detailing the

29

extensive procedures employed by the Bureau in developing and
studying the classification guidelines).

The Court need not reach this issue, however, because even
absent deference, both the classification guidelines and the
Bureau's policy regarding this issue have persuasive force.
Under the rule of Skidmore v. Swift, 323 U.S. 134 (1944), an
agency's interpretation is entitled to respect only to the extent
that it has the power to persuade.  See Navarro v. Pfizer Corp.,
261 F.3d 90, 99 (1st Cir. 2001).  The Court must weigh the
"thoroughness evident in [the Program Statement's] consideration,
the validity of its reasoning, its consistency with earlier and
later pronouncements, and all those factors which give it power
to persuade, if lacking power to control."  Id. (quoting
Skidmore, 323 U.S. at 140).  The security considerations
expressed by the Bureau in determining inmate placement via the
classification guidelines and the thoroughness evident in making
these determinations warrant the Court's acceptance of the
guidelines' provision excluding inmates with "Sex Offender"
Safety Factors from Community Center placement.  Regarding Safety
Factors, the Bureau notes:

> There are certain demonstrated behaviors which require
> increased security measures to ensure the protection of
> society.  There are nine Public Safety Factors (PSFs)[20]

---

[20]  The factors are "Disruptive Group", "Greatest Severity
Offense", "Sex Offender", "Threat to Government Officials",
"Deportable Alien", "Sentence Length", "Violent Behavior",

which are applied to inmates who are not appropriate
for placement at an institution which would permit
inmate access to the community (i.e., MINIMUM
security).  The application of a PSF overrides security
point scores to ensure the appropriate security level
is assigned to an inmate, based on his or her
demonstrated current or prior behavior.

Program Statement 5100.07, ch. 2, at 5.

"[I]nmate[s] whose behavior in the current term of

confinement or prior history" meets the criteria for the

application of a "Sex Offender" Safety Factor "shall be housed in

at least a Low security level institution, unless the PSF has

been waived." Id. ch. 7, at 2.   The policy of excluding inmates

with a "Sex Offender" Safety Factor from Community Center

placement, found in Statement 7310.04, is based in part on the

same security considerations expressed in the classification

guidelines, which were subject to extensive review.   The Court

rules that the close connection between the classification

guidelines and the Program Statement 7310.04 gives the latter the

power to persuade the Court as to its reasonableness.

Fox's claim that he was denied Community Center placement on

the basis of his refusal to participate in a mandatory sex

offender program is essentially a claim that he was denied the

grant of an exception to a Bureau policy not to place inmates

with a "Sex Offender" Safety Factor in Community Centers.   See

"Serious Escape", "Prison Disturbance", "Juvenile Violence"
(juvenile offender), and "Serious Telephone Abuse".  Program
Statement 5100.07, ch. 7, at 1-5.

Lee Decl., Ex. I, Response to Request For Administrative Remedy #379884-F1, at 1-2 (indicating that inmates with a "Sex Offender" Safety Factor are not ordinarily eligible for Community Center placement, but a referral may have been made if Fox demonstrated "good institutional adjustment, including participating in recommended programs"). Yet Fox has no constitutional or statutory entitlement to such placement. Nor does participation in the program guarantee Community Center placement, thereby creating any entitlement.[21] Although the program is a mandatory assignment for "low"/"medium" security inmates with a "Sex Offender" Safety Factor, a recommendation or lack of recommendation for Community Center placement is determined based on participation in the voluntary components of the program. See Handbook at 4. These placement decisions are highly individualized determinations and not reviewable by the Court. See 18 U.S.C. 3625. At best, the policy of using participation to determine whether a Community Center placement is warranted can be reviewable only for abuse of discretion under section 3624 or section 3621. There was no abuse of discretion here.

---

[21] The Bureau outlines standards that can result in custody change consideration, including the level of responsibility demonstrated by the inmate through the degree of program involvement and the nature of interaction with staff and other inmates. See Program Statement 5100.07, ch. 8, at 15-18. Community Center placement can result from this custody change consideration or through an "Institution Referral for CCC Placement" signed and approved by the Warden. Id. ch. 8, at 19.

**III. CONCLUSION**

Accordingly, the petition for declaratory judgement is ALLOWED.  A judgement is hereby entered in favor of the Petitioner, Charles Fox, declaring that classification as a sex offender for purposes of Title 18, Section 4042(c) of the U.S. Code can only be based on a federal offense and that any classification based on a state offense exceeds the Bureau's statutory authority and is inconsistent with congressional intent.

The Bureau is hereby enjoined from applying the provisions of Section 4042(c) to Fox.  Further, any notice sent to state or local authorities informing them of Fox's release must explicitly state that such notice is not pursuant to Section 4042(c) and that registration is not required pursuant to Section 4042(c).

Fox's habeas petition for denial of transfer is DENIED.


SO ORDERED.

 /s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

33